## STATE v. CAMPBELL.

It is within the constitutional power of the legislature to prohibit the sale of milk which contains more than a specified per cent. of watery fluid, or less than a specified per cent. of milk solids.

Evidence that pure milk frequently does not come up to the standard fixed by the legislature is not admissible for the defendant, on the trial of an indictment under the statute for selling adulterated milk.

SMITH, J. The offence for which the respondent is indicted is, first, selling adulterated milk; second, selling milk from which part of the cream had been removed; third, selling milk from which all the cream had been removed,—in violation of c. 42, Laws of 1883, entitled "An act to regulate the sale and inspection of milk." Section 5 prohibits the sale of adulterated milk, or milk to which water or any foreign substance has been added. Section 6 prohibits the sale of milk from which the cream or a part thereof has been removed, as pure milk. Section 7 regulates the sale of skimmed milk. Section 3 authorizes inspectors of milk, when they have reason to believe that any milk found by them is adulterated, to take samples thereof and cause the same to be

analyzed. Section 9 provides that in all prosecutions under the statute, if the milk is shown upon analysis to contain more than eighty-seven per cent. of watery fluid, or less than thirteen per cent. of milk solids, it shall be deemed for the purposes of the statute to be adulterated. The jury returned a verdict of guilty, which the respondent moved to set aside because the jury were instructed that section 9 is within the constitutional powers of the legislature, and for the rejection of certain evidence offered by him.

Under what is generally called the police power of the state, the legislature may protect the public health, comfort, and safety by prohibiting the adulteration of articles of food, and may legislate for the prevention of imposition or fraud in the sale of such articles. *Pierce* v. *The State*, 13 N. H. 536; *State* v. *Clark*, 28 N. H. 176; *State* v. *Freeman*, 38 N. H. 426; *Gage* v. *Censors*, 63 N. H. 92. The sale of bread, the inspection of flour, beef. pork, and other provisions, the practice of medicine, surgery, and dentistry, the licensing of druggists and the sales of drugs and medicines, are regulated, and the sale of spirituous or intoxicating liquor prohibited, by statute. G. L., *cc.* 109, 122, 125, 126, 127, 128, 129, 132, 133. Such legislation is not open to the objection that it transcends the limits of legislative authority, the purpose and object of such legislation being the protection of the lives, health, comfort, and safety of all persons; and for securing this purpose persons and property are subjected to many restraints and burdens. They are presumed to be rewarded by the common benefits secured.

The statute of 1883 regulating the sale of milk was designed to ensure the purity of an article of food of universal consumption, and very largely an article of trade and commerce, many families being dependent upon the dealer for their daily supply. Of the necessity for the statute the legislature is the sole judge. It clearly belongs to the class of police regulations designed to prevent frauds and to protect the health of the people. Similar statutes in other jurisdictions have been held constitutional. *Commonwealth* v. *Farren*, 9 Allen 489; *Commonwealth* v. *Waite*, 11 Allen 264; *Commonwealth* v. *Luscomb*, 130 Mass. 42; *Commonwealth* v. *Evans*, 132 Mass. 11; *State* v. *Smyth*, 14 R. I. 100; *People* v. *Cipperly*, 101 N. Y. 634; *People* v. *West*, 106 N. Y. 293; *Shivers* v. *Newton*, 45 N. J. Law 469.

The analyst was called by the government, and testified to the same facts as shown by his record or certificate. The calling of the analyst therefore destroyed the force of any constitutional objection to the admission of his record or certificate as evidence, if any such objection could be raised. *Commonwealth* v. *Waite*, 11 Allen 264.

If the respondent's objection is to the admission of evidence as to the facts shown by the analysis, it is untenable. In *State* v. *Groves* (R. I. Supt. Ct., December, 1885), it was objected that section 3 of

the Rhode Island statute, similar to section 9 of our statute, was unconstitutional because it virtually confined the testimony to the analysis of the samples taken by the inspector, which were necessarily destroyed in the making of the analysis, so that the testimony could not be controverted. But it was held that the testimony, though it might not always be practicable to controvert it directly by another analysis, could be controverted by evidence of collateral facts going to prove that the analysis was incorrect, and therefore that the statute was not unconstitutional for the reason alleged. The same objection, if well founded, might exclude evidence of analyses made in *post mortem* examinations. See, also, *Shivers* v. *Newton*, 45 N. J. Law 469; *People* v. *Cipperly*, 101 N. Y. 634; *Commonwealth* v. *Waite*, 11 Allen 264.

The fixing of an arbitrary standard in section 9 for pure or unadulterated milk does not render the statute unconstitutional. In *People* v. *Cipperly*, 37 Hun 324, a similar statute of New York was pronounced unconstitutional upon the ground that it deprived the defendant of his liberty and property without due process of law, in that it deprived him of the right upon trial to have the issue determined according to the evidence of the fact, and compelled him to submit to the statutory declaration of the fact without having the truth ascertained. This decision was reversed in the court of appeals (*People* v. *Cipperly*, 101 N. Y. 634), and the constitutionality of the statute sustained on grounds stated in the dissenting opinion in the court below, where the object of the statute was declared to be to regulate and control the quality of an article of food in the interest of the health of the people. *Learned*, P. J., said,—"But the defendant takes the broader ground that the legislature cannot, under the constitution, prohibit the sale of milk drawn from healthy cows which in its natural state falls below the standard fixed by the acts, unless such milk, or the article made from it, is in fact unwholesome or dangerous to public health. How is that question of fact to be determined? The court cannot take judicial notice whether milk below the standard is or is not unwholesome or dangerous to public health. Is that to be a question for the jury? If so, the court must charge a jury in each case that if they find milk below that standard to be unwholesome, then the statute is constitutional; if they find it to be wholesome, then the statute is unconstitutional. Evidently a constitutional question cannot be settled, or, rather, unsettled, in that way. The constitutionality would vary with the varying judgments of juries.

"Either, then, the legislature can, under the constitution, forbid the sale of milk below a certain standard, whether such milk be in fact wholesome or not, or else they cannot do this whether such milk be in fact wholesome or not. If they may fix a standard, they must judge whether or not milk below that standard is wholesome. The courts cannot review that judgment."

The statute tends to discourage the breeding of a certain class of cattle for the supply of the milk market. The difficulty of guarding against the adulteration of milk may have influenced the legislature in fixing a standard of richness. Practically it makes no difference whether milk is diluted after it is drawn from the cow, or whether it is made watery by giving her such food as will produce milk of an inferior quality, or whether the dilution, regarded by the legislature as excessive, arises from the nature of a particular animal or a particular breed of cattle. The sale of such milk to unsuspecting consumers for a price in excess of its value is a fraud which the statute was designed to suppress. It is a valid exercise by the legislature of the police power for the prevention of fraud and the protection of the public health, and as such is constitutional.

These remarks dispose of the respondent's offer to show that an analysis of samples of milk from his cows, made by the same person who analyzed the samples taken by the milk inspector, shew less than thirteen per cent. of milk solids.

The offer to show that the respondent's cows were properly fed, not having been made for the purpose of discrediting the analysis put in by the state, was properly rejected. The evidence was immaterial.

*Exceptions overruled.*

BLODGETT, J., did not sit: the others concurred.

*C. H. Burns*, for the respondent.

*D. Barnard*, attorney-general, and *S. W. Emery*, solicitor, for the state.