ALCORN COTTON OIL CO. *v.* STATE.

[56 South. 397.]

1. CRIMINAL LAW. *Adulteration.* *Code* 1906, *section* 1317. *Laws* 1908, *chapter* 107.

Code 1906, section 1317, making it unlawful for any person to adulterate cotton seed meal or sell adulterated cotton seed meal without noting the adulteration in plain characters upon each sack, is not repealed by acts 1908, chapter 107, section 14, which regulates the sale, inspection and analysis of commercial feed stuffs sold or offered for sale or use in the state, and provides that nothing in the act shall be construed so as to require analysis and branding of cotton seed meal or any mixture thereof.

2. CODE 1906, SECTION 1317. *Constitutionality of act.*

The offense denounced by Code 1906, section 1317, is not the mere sale of adulterated cotton seed meal, but the sellers failure to note on the sacks which contain adulterated cotton seed meal the fact of such adulteration, and under its police powers the legislature can require that fact to be noted for the protection of purchasers.

APPEAL from the circuit court of Alcorn county.

HON. JNO. H. MITCHELL, Judge.

The Alcorn Cotton Oil Company was convicted of violating the laws against the adulteration of cotton seed meal and appeals.

The facts are fully stated in the opinion of the court.

*W. J. Lamb,* for appellant.

The indictment under which the appellant was tried and convicted charged the following:

"James Sloane, of Corinth, in said county of Alcorn, being then and there engaged in the business, among other things of manufacturing, sacking and selling cotton seed meal, did, then and there, willfully and unlaw-

fully adulterate cotton seed meal by then and there mixing hulls therewith without noting such adulteration in plain and legible character on each sack.''

The appellant demurred to this indictment and assigned three grounds of demurrer, alleging that the indictment charged no offense nor had the appellant violated any law; and the third ground, to which we especially call the court's attention, is that section 1317, of the Code of 1906, under which the appellant was indicted, had been repealed by the acts of the legislature of 1908.

Chapter 107, of the acts of 1908, is an act to regulate the sale and inspection of ''commercial feeding stuff.'' Section 2 of this act expressly provides that cotton seed meal, together with other articles enumerated, shall not be considered under the law as commercial feed stuff.

Now, up to this point, the acts of 1908 did not interfere with section 1317, but section 14 of the acts of 1908, says:

''Nothing in this act shall be construed so as to require an analysis and branding of cotton seed, cotton seed hulls and cotton seed meal, or any mixture thereof.''

Section 15 of the same act expressly provides all laws in conflict with the provisions of this act are repealed.

Section 1317 of the Code says that it shall be unlawful for any person or corporation to adulterate any cotton seed meal with hulls without noting such adulteration in plain and legible characters on each sack.

Now, the acts of 1908 says that cotton seed meal shall not be considered as a commercial feed stuff and section 14 of this act says no branding is required on any cotton seed meal or any mixture thereof, which is in direct conflict with section 1317 requiring that such shall be branded, and section 15 of the acts says ''all laws in conflict with the provisions of this act are hereby repealed.'' Section 15 of the acts of 1908 has no savings clause, and, as section 14 says it is not necessary to brand cotton seed meal and section 1317 says you shall do so, one is in di-

rect conflict with the other; and, as the acts of 1908 are subsequent to section 1317, we respectfully submit to the court that this section was repealed and that the appellant could not be tried under this statute.

*Hirsh, Dent & Landau,* for appellant, filed an extended brief contending:

First. That no offense had been charged.

Second. That no law of Mississippi has been violated and cites the following cases: *Harrington* v. *State,* 64 Miss 490; *Rawls* v. *State,* 70 Miss. 739; Code 1892, section 1089; *State* v. *Bardwell,* 72 Miss. 535; Chapter 51 of the Code of 1906; Acts of 1908, p. 98, chapter 107; Sections 2260, 2261 and 2263 of the Code; *State* v. *Dapaquier* (Sup. Ct. of La., March 26, 1894), 15 So. Rep. 502-3; *Commonwealth* v. *Luscomb,* 130 Mass. Rep. 42-3; *Commonwealth* v. *Evans,* 132 Mass. 11; *State* v. *Crescent Creamery Co.* (Sup. Ct. of Minn., May 24, 1901), 86 N. W. 107-8; *St. Louis* v. *Liessing* (Mo. Sup. Ct.), 1 L. R. A. (N. S.) 918 and 920; *State* v. *Campbell* (Sup. Ct. of New Hampshire, Rockingham, March 16, 1888), 13 Atl. 585-6; *People* v. *Marx,* 2 N. E. 29; *State* v. *Smyth,* 51 Am. Rep. 344-5; *People* v. *Worden Grocer Co.* (Sup. Ct. of Mich., Dec. 16, 1898), 77 N. W. 315; *Commonwealth* v. *Kevin* (Sup. Ct. of Pa., March 3, 1902), 51 Atl. 594-5; *Dorsey* v. *State* (Ct. of Crim. App. of Texas, Feb. 16, 1898), 44 S. W. 515; *State* v. *Weeden* (Sup. Ct. of Wyo., March 10, 1909), 100 Pac. 114; *Jesse* v. *State,* 28 Miss. 100; *Norris* v. *State,* 33 Miss. 4, 373; *Newcomb* v. *State,* 37 Miss. 383-4; cited in *Dillard* v. *State,* 58 Miss. 385; *Telheard* v. *City of Bay St. Louis,* 87 Miss. 582; *Thompson* v. *State,* 51 Miss. 353; *Jesse* v. *State,* 28 Miss. 100; *Sullivan* v. *State,* 67 Miss. 346-7; *Rawls* v. *State,* 79 Miss. 739; *Taylor* v. *State,* 74 Miss. 544; *State* v. *Silverberg,* 78 Miss. 858; *Telheard* v. *Bay St. Louis,* 87 Miss. 580, 40 So. Rep. 326.

*Jas. R. McDowell,* assistant attorney-general, for appellee.

Our statute, section 1317 of the Code, is plain in its terms, being part of the chapter on Crimes and Misdemeanors. It makes it a crime to adulterate cotton seed meal without regard to whether or not it is a commercial feed stuff. Your honors will note that in section 2262 of the Code that cotton seed is there treated as a fertilizer. The legislature of 1908 (chapter 107), enacted a law for the regulation of "commercial feed stuff," but it specially says that cotton seed meal is not a "commercial" feed stuff. The indictment in this case, however, is not drawn under the law of 1908, but is drawn under section 1317 (Crimes and Misdemeanors) which is not repealed, not being in conflict with any of the provisions of chapter 107, of the Laws of 1908. The Law of 1908 fixes a penalty upon the adulteration or sale of certain commercial feed stuffs below a certain standard, and provides for inspection analysis. It has nothing to do with the sale of cotton seed meal. This article is especially exempted from the Laws of 1908, and one guilty of adulterating cotton seed meal is punishable under section 1317. It seems too clear for argument that the two laws are not in conflict. A mere reading of them carries conviction of this proposition, and I wonder that counsel is so insistent in his argument that the latter has repealed the former. This appellant was not tried for adulterating a commercial feed stuff. He was convicted of adulterating cotton seed meal, not a commercial feed stuff, and failure to note the adulteration in plain and legible characters on each sack. Section 14 of the act of 1908 says that cotton seed meal, etc., shall not be subject to the act of 1908 with reference to analysis and branding, but it does not say that it may be adulterated without notation on the sack. It does not repeal or attempt to repeal section 1317 of the Code. It simply exempts cotton seed meal from the provisions of

the act of 1908. It seemed to be the purpose all along through this act of 1908 to leave cotton seed meal and several other products just as they were before. In other words, not to put them in this class of commercial feed stuffs. It is well known that cotton seed meal is used for fertilizer, and our legislature has recognized that fact. It is well known also that the public knows what cotton seed meal is if adulterated; the public knows what cotton seed hulls are, that they are nothing but cotton seed hulls. The same is true of corn in the whole grain and other products mentioned in the Law of 1908. The legislature would have been doing a vain thing to class them as a commercial feed stuff, which is usually a mixed product, the adulteration of which cannot readily be detected and the ingredients of which are not generally known unless analyzed and labeled. There is no attempt by the legislature to repeal the criminal offense to sell cotton seed meal which is adulterated by being mixed with hulls to feed his cattle on, he may do so with his eyes open provided there is no deception practiced on him by the same. If one desires to buy cotton seed meal mixed with saw dust, to use as a fertilizer, he may do so under similar conditions. The object of this penal statute is to prevent the practice of deception or fraud. For instance, one might buy cotton seed mixed with saw dust, not noting the ingredients to feed it to his cow and kill her; but if it was stamped cotton seed meal and saw dust, he would use it for fertilizer instead.

Argued orally by *W. J. Lamb* and *Joseph Hirsch,* for appellant, and *Jas. R. McDowell,* assistant attorney-general, for appellee.

WHITFIELD, C.

Section 1317 of the Code of 1906 is in the following words: ''It shall be unlawful for any person or corporation to adulterate any cotton seed meal with hulls,

sawdust or anything else, without noting such adulteration, in plain and legible characters on each sack, and it shall be unlawful for any person to sell in this state any cotton seed meal adulterated with hulls, sawdust or anything else, without such adulteration being noted in plain and legible characters on each sack or receptacle thereof. Any person or corporation violating the foregoing provisions of this section shall be guilty of a misdemeanor, and, on conviction, shall be filed in a sum of not less than one hundred nor more than one thousand dollars."

The appellant was indicted under this statute, the indictment charging that "the Alcorn Cotton Oil Company, being engaged in the business of manufacturing, sacking, and selling cotton seed meal, did then and there willfully and unlawfully adulterate cotton seed meal by mixing hulls therewith, without noting such adulteration in plain and legible characters on each sack." The evidence in the case shows that the appellant sold cotton seed meal to one W. S. Berry, the said sacks of cotton seed meal being composed of fifty per cent. cotton seed meal, and fifty per cent. hulls, without noting such adulteration in plain and legible characters on the sacks. Manifestly, on the facts of the case, the appellant's conduct falls strictly within the condemnation of section 1317.

It is said, first, that this section is repealed by section 14 of the act of 1908 (Laws 1908, chapter 107). We do not think so. The act of 1908 was dealing with a wholly different subject-matter. The Law of 1908 fixes the penalty for the adulteration or sale of certain commercial foodstuffs falling below a certain standard, and provides for inspection, analysis, etc. It has nothing to do with the sale of cotton seed meal. That article is especially excepted from the Law of 1908.

It is next said that section 1317 is unconstitutional, because it does not inform the defendant of the nature and cause of the accusation against him, in this: That the said section does not prescribe any standard of adul-

teration. The first thing to be observed in the discussion of this proposition is that section 1317 does not declare the mere sale of adulterated cotton seed meal a crime. That section, and sections 2260, 2261, and 2263 of chapter 51 of the Code of 1906, plainly shows that the appellant could have sold, so far as a mere sale was concerned, any grade of cotton seed meal. The offense denounced by section 1317 is not the mere sale of adulterated cotton seed meal, but its failure to note on the sacks which contained adulterated cotton seed meal the fact of such adulteration. That precisely is the purpose and object of the section, and this object must be kept in mind in discussing the constitutionality of the statute. The plain object of this statute is to require those who adulterate cotton seed meal with hulls to note such adulteration on the sacks or receptacles, so that the purchaser may know exactly what he is getting and paying for. If the vendor wishes to sell adulterated cotton seed meal, he may do so; but he must note the adulteration on the sacks, so that he who buys may know that he is not being defrauded by getting something different from what he offers to buy.

The learned counsel for appellants cite a number of cases from other states, every one of which we have critically examined. We do not think any of those cases is strictly in point, where the offense charged, as here, is the failure to note adulteration on the receptacles of the adulterated material. Nearly all these cases are cases in which a statute first prescribed a standard of purity, and then afterwards made it a crime to sell the particular thing, as milk, etc., unless the article so sold came up to the standard prescribed in the statute. Those cases are not at all in point in a consideration of the constitutionality of this statute, which permits the sale, and does not prohibit the sale, of adulterated cotton seed meal, but makes it an offense to so sell without noting the adulteration on the receptacles.

In the case of *Commonwealth* v. *Kevin*, 202 Pa. 23, 51
Atl. 594, 90 Am. St. Rep. 613, the statute provided that
an article of food should be deemed adulterated if it con-
tained any added substance which is poisonous or inju-
rious to health, and the court held that that statute made
it an adulteration to add a substance which was poison-
ous or injurious in any quantity, even though the quan-
tity added was not enough to make the compound poi-
sonous or injurious to health. For the very same rea-
son this section 1317 was a proper exercise of legislative
power, even if it declared cotton seed meal to be adul-
terated by the addition of any quantity of hulls uninten-
tionally mixed with the cotton seed meal, no matter how
small the quantity. In the course of the opinion the
court said: "The purpose of the legislature in the pas-
sage of the act is most commendable, and the statute
should receive a construction by the courts that will fully
and effectually accomplish the object of its enactment."
And again the court said: "As said above, the purpose
of the act was two-fold: To protect the public health,
and to prevent fraud and deception in the manufacture
and sale of adulterated food. It is within the province
of the general assembly to determine whether the addi-
tion of a poisonous or injurious substance to a food
article endangers the health of the citizens of the state
who used the compound; and, if it does, then it is clearly
within the police power of the state to prohibit the man-
ufacture and sale of the adulterated article, as well as
to protect the public from imposition or fraud in the sale
of it. The exercise of such authority by the legislative
department of the government does not transcend the
constitutional limits of its power. In *Powell* v. *Commis-
sioners*, 114 Pa. 294, 7 Atl. 913, 60 Am. Rep. 350, Ster-
rett, J., after reviewing the cases holding legislation to
be constitutional on the ground that it was the lawful
exercise of the police power of the state, says: 'The
manufacture, sale, and keeping with intent to sell may

alike be prohibited by the legislature, if in their judgment the protection of the public from injury or fraud requires it. To deny the authority of the legislature to do so is to attack all that is vital in the police power. To refuse recognition of the power in a given case because in the judgment of some the legislature, though acting within its proper sphere, may have mistaken the public necessity for a law prohibitory in its character, is to make the individual judgment superior to that of the legislature, to which the people in their sovereign capacity have delegated the lawmaking power.' "

In *City of St. Louis* v. *Liessing*, 1 L. R. A. (N. S.), in the note at page 918, it is said: "The regulations most frequently tested in the courts are those establishing an arbitrary standard of quality, without regard to the question of adulteration or extraction, and prohibiting under penalty the sale of milk falling below the required standard. *St. Louis* v. *Liessing* is typical of the decisions upon this question. The authorities are there very thoroughly gathered; but see, especially, also, as sustaining regulations of similar character, *State* v. *Smyth*, 14 R. I. 100, 51 Am. Rep. 344; *State* v. *Campbell*, 64 N. H. 402, 13 Atl. 585, 10 Am. St. Rep. 419; *State* v. *Stone*, 46 La. Ann. 147, 15 South. 11; *Commissioners* v. *Hough*, 1 Pa. Dist. R. 51; *Kansas City* v. *Cook*, 38 Mo. App. 660; *State* v. *Crescent Creamery Co.*, 83 Minn. 284, 86 N. W. 107, 54 L. R. A. 466, 85 Am. St. Rep. 464; *People* v. *West*, 106 N. Y. 293, 12 N. E. 610, 60 Am. Rep. 452; *People* v. *Kibler*, 106 N. Y. 323, 12 N. E. 795; *People* v. *Cipperly*, 101 N. Y. 634, 4 N. E. 107 (reversing 37 Hun [N. Y.] 319); *State* v. *Groves*, 15 R. I. 208, 2 Atl. 384. The intent to evade the regulation is no part of the offense, and a dealer is guilty though he sells the milk exactly as drawn from the cows, when it falls below the required standard. *State* v. *Campbell, supra; Pain* v. *Boughtwood*, L. R. 24 Q. B. Div. 353; *People* v. *Kibler, supra; People* v. *Schaeffer*, 41 Hun [N. Y.] 23; *Com-*

*missioners* v. *Farren,* 9 Allen [Mass.] 489; *Commissioners* v. *Warren,* 160 Mass. 533, 36 N. E. 308.''

In *Dorsey* v. *State,* 38 Tex. Cr. Rep., at page 533, 44 S. W. at page 515, 40 L. R. A. 201, 70 Am. St. Rep. 762, the court expressly held that: ''It would be entirely competent for the legislature by an act to prohibit the sale of flour mixed with meal, or any other wholesome article, without properly labeling the product of such combination.'' That is a square decision that our statute prohibiting the sale without noting the adulteration of cotton seed meal mixed with hulls in any quantity is a constitutional statute.

In the case of *State* v. *Campbell,* 64 N. H. 402, 13 Atl. 585, 10 Am. St. Rep. 419, the state prohibited the sale of adulterated milk, or milk to which water or any foreign substance had been added. That act was assailed as unconstitutional, and the court said: ''Under what is generally called the 'police power' of the state, the legislature may protect the public health, comfort, and safety by prohibiting the adulteration of articles of food, and may legislate for the prevention of imposition or fraud in the sale of such articles. *Pierce* v. *State,* 13 N. H. 536; *State* v. *Clark,* 28 N. H. 176, 61 Am. Dec. 611; *State* v. *Freeman,* 38 N. H. 426; *Gage* v. *Censors,* 63 N. H. 92, 56 Am. Rep. 492. The sale of bread, the inspection of flour, beef, pork, and other provisions, the practice of medicine, surgery, and dentistry, the licensing of druggists, and the sale of drugs and medicines, are regulated, and the sale of spirituous or intoxicating liquor prohibited by statute. Gen. Laws, chapters 109, 122, 125, 129, 132, 133. Such legislation is not open to the objection that it transcends the limits of legislative authority, the purpose and object of such legislation being the protection of the lives, health, comfort, and safety of all persons, and for securing this purpose persons and property are subjected to many restraints and burdens. They are presumed to be rewarded by the common benefits

secured.  The statute of 1883 regulating the sale of milk was designed to insure the purity of an article of food of universal consumption, and very largely an article of trade and commerce; many families being dependent upon the dealer for their daily supply.  Of the necessity for the statute the legislature is the sole judge.  It clearly belongs to the class of police regulations designed to prevent frauds and to protect the health of the people. Similar statutes in other jurisdictions have been held constitutional.  *Commissioners* v. *Farren,* 9 Allen [Mass.] 489; *Commissioners* v. *Waite,* 11 Allen [Mass.] 264, 87 Am. Dec. 711; *Commissioners* v. *Luscomb,* 130 Mass. 42; *Commissioners* v. *Evans,* 132 Mass. 11; *State* v. *Smyth,* 14 R. I. 100, 51 Am. Rep. 344; *People* v. *Cipperly,* 101 N. Y. 634, 4 N. E. 107; *People* v. *West,* 106 N. Y. 293, 12 N. E. 610, 60 Am. Rep. 452; *Shivers* v. *Newton,* 45 N. J. Law, 469.''

It is curious to note in this last case that the statute was assailed as unconstitutional for directly the opposite reason from that assigned here.  The complaint here is that section 1317 prescribes no standard.  The complaint in *State* v. *Campbell* was that the statute was unconstitutional because it did prescribe an arbitrary standard, and on that point the court makes the following very pertinent observations:  ''The fixing of an arbitrary standard, in section 9, for pure or unadulterated milk, does not render the statute unconstitutional.  In *People* v. *Cipperly,* 37 Hun (N. Y.) 324, a similar statute of New York was pronounced unconstitutional upon the ground that it deprived the defendant of his liberty and property without due process of law, in that it deprived him of the right upon the trial to have the issue determined according to the evidence of the fact, and compelled him to submit to the statutory declaration of the fact without having the truth ascertained.  This decision was reversed in the court of appeals (101 N. Y. 634, 4 N. E. 107), and the constitutionality of the statute

sustained on grounds stated in the dissenting opinion of the court below, where the object of the statute was declared to be to regulate and control the quality of an article of food in the interest of the health of the people. Learned, P. J., said: "But the defendant takes the broader ground that the legislature cannot, under the constitution, prohibit the sale of milk drawn from healthy cows which in its nature state falls below the standard fixed by the acts, unless such milk, or the articles made from it, is in fact unwholesome, or dangerous to public health. How is that question of fact to be determined? The court cannot take judicial notice whether milk below the standard is, or is not, unwholesome or dangerous to the public health. Is that to be a question for the jury? If so, the court must charge a jury in each case that, if they find milk below that standard to be unwholesome, then the statute is constitutional; if they find it to be wholesome, then the statute is unconstitutional. Evidently a constitutional question cannot be settled, or rather unsettled, in that way. The constitutionality would vary with the varying judgment of juries. Either, then, the legislature can, under the Constitution, forbid the sale of milk below a certain standard, whether such milk be in fact wholesome or not. If they may fix a standard, they must judge whether or not milk below that standard is wholesome."

We think it is perfectly clear that the legislature had the power to declare that cotton seed meal adulterated to any extent with hulls should not be sold, without noting such adulteration as held in the two cases just above referred to by the learned counsel for appellant. We are therefore clearly of the opinion that the statute on its face is constitutional; and since on the merits of this case, the cotton seed meal sold and unlabeled consisted of fifty per cent. hulls, it must be manifest that under any standard this appellant was properly convicted.

Nothing in this opinion is intended to state that any testimony, other than expert testimony, would be com-

petent to show whether cotton seed meal was adulterated. That point is not before us.                    *Affirmed.*

Per Curiam.   The above opinion is adopted as the opinion of the court, and for the reasons therein indicated, the judgment is affirmed.