State vs. Stone.

--- --- --- ---

No. 11,316.

STATE OF LOUISIANA VS. JOHN STONE.

The defendant was found guilty of selling adulterated milk.

The defendant having handed two samples of milk, less than a pint in each, without the least objection, is not in a position before the court to question the validity of that part of an ordinance which provides that dairymen shall fur-

nish, under the penalty of fine and imprisonment, gratuitously, samples of milk whenever required so to do by the health officer, to be subjected to analysis.

There should be some objection made in order that the vendor of milk may not appear to give unqualified assent to furnishing the milk asked.

While defendant's waiver precludes him from defending on the ground that the milk for analysis was unlawfully obtained, the fine imposed enables him to question the validity of the remainder of the ordinance.

Under the police power and the statutes delegating authority to the municipality, the City Council may protect health by prohibiting the adulteration of milk, and may adopt ordinances to that end.

Such ordinances are not open to the objection that they transcend the limits of municipal authority; the purpose being the protection of public health.

To secure such a purpose persons and property are subjected to many restraints and burdens.

Those who directly feel the restraints and burdens are presumed to be rewarded by the common benefit secured.

The ordinances were designed to insure the purity of an article of food upon which many families are dependent. It is of universal consumption.

The police regulations upon the subject are designed to prevent fraud and protect health.

Under the police power and the delegated authority the ordinance of the Council relating to the necessity of selling pure milk, is legal and the fine was legally imposed.

These ordinances, without proof to the contrary, are not unreasonable. The standard adopted to test the purity of the milk can not operate to the exclusion of all other evidence upon the subject.

Upon proof of the unreasonableness of the standard, that part of the ordinance relating to standard of purity of milk would be illegal and amenable to the charge of unreasonableness.

There is no such proof of record.

APPEAL from the First Recorder's Court, City of New Orleans. *Whitaker, J.*

*Frank McGloin* Attorney of Board of Health, for Plaintiff and Appellee.

*Jas. C. Walker* for Defendant and Appellant.

The opinion of the court was delivered by

BREAUX, J.   The defendant appeals from a sentence of the First Recorder's Court condemning him to pay a fine of $25, and in default of payment to suffer imprisonment for thirty days on the charge of selling adulterated milk in violation of an ordinance of the city.

His ground of appeal is that the ordinance provides for the con-

viction of dairymen by means of evidence forbidden by the Constitutions of the State and the United States by ordaining that they shall furnish, under the penalty of fine and imprisonment, gratuitously, samples of milk whenever required so to do by the health officers, to be subjected to analysis.

The defendant on the trial objected to the introduction of proof as to the quality of the samples of milk.

The defendant delivered to the inspector two samples, one from each can of the milk he had for sale. Each sample consisted of a mall quantity, less than a pint, which the inspector handed to the chemist of the Board of Health.

After the analysis the inspector made an affidavit against the defendant, charging him with having violated city ordinance 6596, relating to adulterated milk.

As a witness on the trial the chemist testified that the milk was below the standard. With reference to the analysis he testified that it was accurate, and explained the method followed in testing the milk; that he had examined a large number of samples of natural milk, and that in no instance had he found them less than the standard adopted, except where the cows were diseased, or just before or after parturition.

The constitutionality of the ordinance is questioned.

The facts, as disclosed by the record, do not prove that the defendant was compelled to be a witness against himself and furnish samples of milk.

While in order to retain a right in opposition to any demand in execution of a law, on the ground of its illegality, there is no necessity to resort to downright resistance or to a display of combativeness; there should be sufficient objection manifested to render it certain that assent was not intended.

The facts upon this point are in evidence and have been considered.

They prove compliance and in consequence exclude certain constitutional objections that would necessitate a decision if the defendant had been forced to give up the samples.

Moreover: " Where power is expressly given to municipal authorities to license and regulate trades and callings generally, or certain specified trades and callings, or where power to exact licenses is implied, it will be found that such authorities have very commonly pro-

hibited certain employments which affect closely the public health or safety, except the persons engaged therein take out licenses to prosecute such employments. This restriction is usually applied to the business or employment of architects, bakers, dealers in old rags or in meats and provisions, or in milk, or in spirituous liquors, or in dangerous articles," and other trades and occupations. Parker and Worthington, p. 298.

License itself is one of the means of regulation.

It has the effect of lessening the number that would, without it, engage in the trade or occupation licensed and thereby to a corresponding extent decreases competition.

By the license the trade or occupation is brought more directly within the scope of the police power.

This being a fact of which it must be presumed the defendant was aware when called upon for samples, instead of objecting he delivered them to the inspector and continued selling the milk he had for sale.

He can not be heard to question the regularity or legality of the execution of the ordinance, to the execution of which he consented.

The acquiescence in the execution of the ordinance does not have the effect of defeating the plea of the illegality of the ordinance itself as violative of the Constitution and *ultra vires*.

The consent to a test does not make legal that which may be illegal in the ordinance under which the proceedings were instituted and the fine imposed.

The waiver of a citation and of other informalities under which a defendant may be brought in court and proof offered against him is not a waiver of illegalities of the law under which he is prosecuted and condemned. A similar rule applies to the case at bar.

The authority *vel non* of the municipality to pass the ordinance in question under the City Charter, and the implied power of the municipality under the charter are remaining issues for our determination.

Under the charter the council has the power, and it is made their duty, to pass such ordinances and to see to their faithful execution as may be proper and necessary to prevent the sale of adulterated food and to punish those guilty of adulterating food and drinks.

The authority to punish the violators of ordinances drawn under

Secs. 7 and 8 of the Charter is delegated by Act 41 of 1890. State *ex rel.* Joseph vs. Bringier, Recorder, 42 An. 1095; State vs. Boneil, 42 An. 1110.

The ordinance under this authority adopts a standard by which the adulteration of milk shall be determined, and ordains that any person found guilty of selling milk below the standard shall be subject to a fine of not more than $25 for each offence, and in default of payment to imprisonment for a period not exceeding thirty days, thus conforming with the requirement of the statute delegating authority to the municipality.

The statute and the ordinance were properly directed to fixing a legal standard to which all milk is subjected; to fixing penalties for violation of the ordinance and establishes the duties of the chemists by whom the analysis is made. These details are appropriately within legislative control; they do not transcend the limits of legislative authority. They belong to the class of police regulations designed to protect health and prolong life.

The intention throughout was to prevent the sale of adulterated milk.

The provisions fixing a standard are valid, as they merely control and regulate the method of ascertaining the quality

The design being to prevent the sale of adulterated milk and to regulate an employment that must be regulated, it was not *ultra vires* on the part of the council to fix a standard of quality of the milk.

The exercise of trades and occupations are subject to reasonable conditions essential to health; if the power be not express, under the implied power the council would have the authority to adopt measures to maintain a standard of purity of that article of food to the extent of preventing the evil and injurious consequences to the public or to individuals.

The question was decided in State vs. Fourcade, 45 An. 717.

Judgment affirmed at appellant's cost.