## City of Owensboro v. Evans.

(Decided December 15, 1916.)

### Appeal from Daviess Circuit Court.

1. Criminal Law—Sufficiency of Warrant.—The offense charged in a warrant need not be described with the same technical strictness that is required in an indictment. All that is ordinarily necessary is to follow the form prescribed by section 27 of the Criminal Code and merely name the offense charged. It is not necessary to add that the offense charged is contrary to a particular ordinance or statute.

2. Criminal Law—Sufficiency of Warrant.—A warrant charging the defendant with the offense "of selling milk in the city of Owensboro without a permit from the food inspector, and failing to have his cows examined by a veterinarian, in said city on or about the .... day of June, 1915," is valid when issued pursuant to a valid ordinance.

3. Municipal Corporations—Ordinances—Construction of the Constitution.—Section 168 of the Constitution providing that "no municipal ordinance shall fix a penalty for violation thereof at less than that imposed by statute for the same offense," does not apply where the offense under the ordinance is different from that prescribed by statute.

4. Municipal Corporations—Ordinances—Title—Single Subject Expressed in Title—Construction of Constitution.—Constitution, section 51, providing that "no law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title," applies only to laws enacted by the general assembly and not to municipal ordinances.

5. Food—Regulating Sale—Municipal Corporations—Police Power.—Under charter provisions conferring on common councils of cities of the third class the power "to make all police regulations to secure and protect the general health, comfort, convenience, morals and safety of the public," and to "provide for and regulate the

inspection of milk, butter, lard and other provisions," such cities have the power to pass an ordinance, fixing the standard of quality of milk sold, regulating the care and feeding of milch cows and the manner of handling·and conveying the milk, and prescribing other reasonable conditions under which the dairyman shall have the right to sell in the municipality.

6. Food—Regulating Sale — Municipal Corporations — Ordinances — Validity.—It is within the police power of a city of the third class to require, as a condition precedent to the right to sell milk in the city, that the applicant shall state on oath that his cows have been subjected to the tuberculin test and the result thereof, and that he will comply with the provisions of the ordinance regulating the sale of milk.

7. Food—Regulating Sale—Municipal Corporations—Police Power.— An ordinance which provides that persons offering milk for sale shall thoroughly wash and wipe their hands and the cows' udders before beginning to milk; that they shall not use pails, cans, etc., until they have been thoroughly washed with hot water and'soap, and afterwards sterilized with boiling'water or steam; and that the dairyman shall cover his pails, cans, etc., with sterilized absorbent cotton between two layers of sterilized gauze, through which the milking shall be done, is not unreasonable or oppressive.

8. Food—Regulating Sale—Municipal Corporations—Police ,Power.— An ordinance providing that dairymen must refrain from milking or handling milk in any way, when in themselves, or their families, there is even a suspicion of any contagious or infectious disease, such as smallpox, scarlet fever, diphtheria, typhoid, tuberculosis, or the like, should be given a practical construction and read as if the word "reasonable" were inserted before the word "suspicion," and when so construed is a proper exercise of the police power.

9. Food—Regulating Sale—Municipal Corporations—Police Power.— Since a municipality has the power to prescribe the standard of milk sold therein, an ordinance providing that the milk so sold shall not contain over 300,000 bacteria per cubic centimeter, or any pathogenic bacteria of any kind, will not be held unreasonable or oppressive, in the absence of convincing evidence to the effect that it is practically impossible for dairymen to furnish milk of the standard required.

10. Food—Regulating Sale—Municipal Corporations—Police Power.— An ordinance providing that wagons used in delivering milk shall be furnished with covers and shall be neat and clean, and to that end the interior thereof shall be scrubbed with soap and water at least twice a week; that the wagons shall be kept neatly painted, and that no vegetables or waste products shall at any time be hauled in any wagon used in the transportation of milk, is not unreasonable or oppressive.

TANNER W. JETT for appellant.

W. T. ELLIS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

C. O. Evans, a dairyman, was arrested on a warrant issued by the police court of the city of Owensboro, charging him with the offense of selling milk in that city without a permit from the food inspector, and failing to have his cows examined by a veterinarian. On the hearing in the police court a certified copy of the ordinance under which the warrant was issued was filed. Defendant's demurrer to the warrant was sustained and the prosecution dismissed. An appeal to the circuit court resulted in the same ruling. The city appeals.

The warrant is as follows:

"City of Owensboro:

"To the marshal, or any policeman, or to any police officer of Daviess county, Ky.:

"You are hereby commanded to summons C. O. Evans to appear in the Owensboro police court on the 8th day of June, 1915, at 8 o'clock a. m., to answer the charge of selling milk in city of Owensboro without a permit from the Food Inspector, and failing to have his cows examined by a veterinarian, in said city on or about the ........... day of June, 1915, and have then and there this writ with due return upon it.

"Given under my hand this 8th day of June, 1915. Information by Dr. Harl.

"Yewell Haskins, P. J. O."

The ordinance on which the prosecution is based is as follows:

"An ordinance regulating the production, care, sale and distribution of milk and milk products.

"*Be it ordained by the Common Council of the City of Owensboro*:

"Sec. 1. That this ordinance is supplemental to 'An ordinance regulating the sale of milk,' adopted and approved by the Common Council of the city of Owensboro, June 7th, 1905.

"Sec. 2. That in 'An ordinance regulating the sale of milk,' where the words health officer occur, the words food inspector, shall be substituted.

"Sec. 3. That no person shall sell, bring into the city of Owensboro for sale, or shall offer for sale or for human consumption any milk or cream without a permit from the food inspector; no fee shall be charged for

said permit, which shall be issued to any person in such business who shall first file the following affidavit with the food inspector:

"'I, ............................, do solemnly swear that I am the owner (or manager) of a dairy situated at ........................, and desire to engage in the business of selling milk, butter, and milk food products to the inhabitants of the city of Owensboro; that at the time I had the examination, hereinafter referred to, made, I had ............ head of cows in my dairy herd; that from ............. to ........................ 19........, I had said entire herd examined with the tuberculin test by Dr. ................................, a graduated veterinarian approved by the city of Owensboro; and that ............ head were found to be free from tuberculosis or other disease, and that ................ reacted under the tuberculin test; and that I immediately caused all of these found so suffering to be tagged T. B. in left ear, and at once eliminated them from my herd and isolated, or killed them.

"'I promise, if granted the permit applied for, to, insofar as possible, conduct my dairy and said business in compliance with the laws of the state of Kentucky, and the ordinances of the city of Owensboro, and I agree that any officer or authorized agent of the city of Owensboro, may at any time enter upon my premises, whether inside or outside of the corporate limits, and inspect my said dairy and cattle, method of handling the milk, etc., and may require any person in charge of any of my wagons delivering milk, buttermilk, cream, butter or milk food products to be tested by said city.

"'I further understand and agree that the permit herein applied for may be revoked for any violation of, or failure to comply with, the laws of the state of Kentucky, or the city ordinances governing, and with this understanding I hereby apply to the food inspector of the city of Owensboro for permission to engage in the business of supplying the inhabitants of the city of Owensboro with milk, cream, butter and milk food products.

"'Sworn to and subscribed before me this ............ day of ........................, 19.........

"'............................................................., N. P.'

"Sec. 4. If dairymen or other persons offering milk for sale use tickets as representations of value, these tickets must be in coupon form and must be destroyed after once using.

"Sec. 5. The milkers must thoroughly wash and wipe their hands and the cows' udders before they begin milking. They must not use pails, cans, etc., unless they have been thoroughly washed in hot water and soap and afterwards sterilized with boiling water or steam and shall cover their pails, cans, etc., with sterilized absorbent cotton between two layers of sterilized gauze through which the milking shall be done. Care must be taken that the seams of the vessels are thoroughly cleaned with a brush. They must refrain from milking or handling milk in any way when in themselves or families there is even a suspicion of any contagious or infectious disease, such as smallpox, scarlet fever, diphtheria, typhoid, tuberculosis, or the like.

"Sec. 6. Immediately after milking the milk shall be removed from the stable into a milk room, screened from flies and from other insects, aerated and cooled to at least 50 degrees F. temperature and put into perfectly clean and sterile bottles or cans. Dairymen who use both bottles and cans in delivering milk shall not fill bottles while on their delivery route. No person or corporation shall offer for sale or keep for sale any milk or cream drawn from any cow within fifteen days before or one week after parturition of such cow.

"Sec. 7. The milk house or milk room, cesspool or vault must be provided with a tight floor, either concrete or wood, laid so as to provide drainage. It must be kept clean at all times and free from any odors.

"Sec. 8. Milk must not contain over 300,000 bacteria per cubic centimeter.

"Sec. 9. Milk must not contain any pathogenic bacteria of any kind.

"Sec. 10. That each dairy wagon used in the delivery of milk shall have the name of the owner or proprietor and the number of the permit under which the business is conducted painted thereon in prominent letters. All such wagons shall be provided with covers and shall be neat and clean, the interior of such wagons being scrubbed with soap and water at least twice per week. The wagons shall be kept neatly painted. No vegetables or waste products shall at any time be hauled in any wagon used in the transportation of milk.

"Sec. 11. That no milk shall be delivered to customers or any milk depot at a temperature higher than 60 degrees F.

"Sec. 12. No milk shall be strained in a barn or any other place where it will be liable to become contaminated, and every dairy shall. be equipped with an aerator of an approved type over which milk shall be poured, as it is strained, said aerator to be filled with cold water or ice.

"Sec. 13. That any person who violates any of the provisions of this ordinance shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than $10.00 nor more than $50.00; for the second offense by fine of not less than $25.00 nor more than $100.00; for the third offense by a fine of not less than $50.00 nor more than $100.00 and for each subsequent offense after the third offense by a fine of not less than $100.00.

"Sec. 14. Any person who offers for sale in the city of Owensboro for human consumption any milk or cream or milk products, whether a resident or non-resident, shall furnish a sample of such milk to the food inspector who may request the same for the purpose of examination or analysis, and such person who so offers for sale milk, or cream or milk products for human consumption in the city of Owensboro, shall permit food inspector of said city to visit his premises and inspect his cows, milk, vessels, stables, milk room, wagons used for conveying said milk, and shall permit such food inspector to make all necessary inspection of all articles, appliances and property used in and about the keeping. of said cows and the handling of said. milk

"Sec. 15. In case the Mayor and Common Council fail to appoint a food inspector, then the city physician designated by the Mayor shall perform the duties of this ordinance, and for which extra services he shall be paid a reasonable compensation to be agreed upon between him and the Common Council or which may hereafter be fixed by ordinance.

"Sec. 16. All ordinances and parts of ordinances in conflict herewith are hereby repealed.

"Sec. 17. This ordinance shall take effect and be in full force and effect 30 days after the date of its final passage."

1. The defendant takes the position that the judgment of the court below was correct, because the warrant failed to state a public offense. In this connection it is argued that the warrant does not charge defendant with selling impure or adulterated milk, or with having sold milk in

violation of any ordinance of the city or statute of the state. Nor does it charge that it is unlawful to sell milk in the city of Owensboro without a permit from the food inspector, or that there was any ordinance in that city requiring those who sold milk therein to have their cows examined by a veterinarian. Section 27 of the Criminal Code of Practice provides that a warrant of arrest shall, in general terms, name or describe the offense charged to have been committed, state the county in which it was committed, and command the officer to whom it is directed to arrest the person named therein as the offender, and bring him before some magistrate of the county in which the offense was committed, to be dealt with according to law. It further provides that the warrant may be substantially in the following form, varying the terms to suit the case:

"The Commonwealth of Kentucky to any sheriff, constable, coroner, jailer, marshal or policeman, of the state of Kentucky:

It appearing that there are reasonable grounds for believing that A B has committed the offense of larceny in the county of Franklin, you are therefore commanded forthwith to arrest A B, and bring him before some magistrate of Franklin county, to be dealt with according to law.

"..................................................,

"Justice of the Peace for Franklin County."

In construing this section it has frequently been held that the offense charged in a warrant need not be described with the same technical strictness that is required in an indictment. All that is ordinarily necessary is to follow the form prescribed by the Code and merely name the offense charged. It is not necessary to add that the offense charged is contrary to a particular ordinance or statute. Delk v. Commonwealth, 166 Ky. 39, 178 S. W. 1129; Driscoll v. Commonwealth, 93 Ky. 393, 20 S. W. 431; Commonwealth v. Leak, 116 Ky. 540, 76 S. W. 368.

Here the warrant names the offense in general terms and is, therefore, sufficient, provided the ordinance denouncing the offense is itself valid, a question which we shall hereafter consider.

2. One of the grounds on which the ordinance is assailed is that it violates section 168 of the constitution, providing that "no municipal ordinance shall fix a penalty for violation thereof at less than that imposed by

statute for the same offense." The statute on the subject is as follows:

"Whoever shall knowingly sell, or cause to be sold, to any person in this state, milk diluted with water, or in any way adulterated, or milk from which any cream has been taken, or sell milk commonly known as 'skimmed milk,' with intent to defraud, or shall knowingly sell any milk, the product of a diseased animal, or from animals fed upon 'still slop,' 'brewers' slop,' or 'brewers' grains,' or shall knowingly use any poisonous or deleterious material or milk from animals diseased or fed as aforesaid, in the manufacture of butter or cheese, shall be fined in any sum not less than twenty-five nor more than two hundred dollars."

The ordinance in question provides "that no person shall sell, bring into the city of Owensboro for sale, or shall offer for sale or for human consumption, any milk or cream without a permit from the food inspector," and also provides how the permit shall be obtained. The offense denounced by the statute is that of knowingly selling, or causing to be sold, diluted, adulterated or skimmed milk, with intent to defraud, or knowingly selling milk, the product of a diseased animal, or from animals fed upon 'still slop,' 'brewers' slop,' or 'brewers' grains,' or knowingly using any poisonous or deleterious material or milk from animals diseased in the manufacture of butter or cheese. On the other hand, the offense denounced by the ordinance and charged in the warrant is that of selling milk or cream for human consumption without a permit from the food inspector, and failing to have one's cows examined by a veterinarian of the city. By its very terms the above section of the constitution is restricted in its application to those cases where the statutory offense and the offense under the ordinance are the same. Here the offenses are different and the constitutional provision does not apply. Keiper v. City of Louisville, 152 Ky. 691.

3. The ordinance is not invalid on the ground that it violates section 51 of the Constitution, which provides that "no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title," etc., since that section has no application to city ordinances. Swann, et al. v. City of Murray, et al., 146 Ky. 148; Tuggles v. Commonwealth, 30 R. 1071;

Kentucky Light & Power Co. v. James H. Williams, et al., 124 S. W. 840.

4. It is next insisted that the council of the city of Owensboro did not have the power to pass the ordinance in question. The charter of cities of the third class confers upon their common councils the power, by ordinance, "to make all police regulations to secure and protect the general health, comfort, convenience, morals and safety of the public," and to "provide for and regulate the inspection of milk, butter, lard and other provisions." Kentucky Statutes, section 3290, subsections 16 and 21. Perhaps no article of food or drink is more fruitful of disease than milk. If it be impure or unwholesome the health of the whole community is endangered. Clearly the authority of a municipality having power to deal with the subject, if restricted to an occasional inspection, would fall far short of protecting the public. In the meantime, great quantities of unwholesome milk might be sold to the detriment of large portions of the community. Hence it is necessary not only to provide for inspection, but also to prescribe the standard of quality of milk sold, to regulate the care and feeding of milch cows, the manner of handling and conveying the milk and to fix other reasonable conditions under which the dairyman shall have the right to sell in the municipality. For these reasons, the courts, with singular unanimity, have upheld such police regulations, whether made by the state through the operation of a general statute, or by city councils through local ordinances, passed pursuant to police powers no broader than those conferred on the city of Owensboro. We therefore conclude that the enactment of the ordinance in question was within the police power of the city of Owensboro. City of St. Louis v. Liessing, 190 Mo. 464, 89 S. W. 611, 1 L. R. A. (N. S.), 918; State v. Smyth, 14 R. I. 100, 51 Am. Rep. 344; State v. Campbell, 64 N. H. 402, 10 Am. St. Rep. 419, 13 Atl. 585; State v. Stone, 46 La. Ann. 147, 15 So. 11; Com v. Hough, 1 Pa. Dist. R. 51; Kansas City v. Cook, 38 Mo. App. 660; State v. Crescent Creamery Co., 83 Minn. 284, 54 L. R. A. 466, 85 Am. St. Rep. 464, 86 N. W. 107; People v. West, 106 N. Y. 293, 60 Am. Rep. 452, 12 N. E. 610; People v. Kibler, 106 N. Y. 323, 12 N. E. 795; People v. Cipperly, 101 N. Y. 634, 4 N. E. 107, Reversing 37 Hun 319; State v. Groves, 15 R. I. 208, 2 Atl. 384; White v. Commonwealth, 122 Ky. 448.

5. But it is insisted that the provisions of the ordinance itself are so unreasonable, oppressive and burdensome as to render the ordinance invalid. In the first place, it is argued that the council has no power to require the oath prescribed by the ordinance as a condition precedent to defendant's engaging in a lawful business. In order to obtain a permit to sell milk in the city, the applicant is required to make oath that he had had his entire herd of cows subjected to the tuberculin test by a graduated veterinarian approved by the city; that so many head were found to be free from tuberculosis or other disease, and that so many head reacted under the tuberculin test, which latter animals he caused to be isolated or killed. He is also required to swear that he will conduct his dairy business in accordance with the laws of Kentucky and ordinances of the city, and that he will permit any officer of the city to enter upon his premises at any time to inspect his dairy and cattle, his method of handling the milk, etc., and that he will permit his dairy products to be tested at any time by the city. It has been held that the requirement that a dairyman shall consent, as a condition precedent to his procuring a license to sell milk in a municipality, that the animals from which he obtains the milk shall be subjected to the tuberculin test, is not unreasonable. Nelson, et al. v. City of Minneapolis, et al., 29 L. R. A. (N. S.), 260; State v. Nelson, 66 Minn. 34 L. R. A. 318. And, certainly, the further requirement that he shall comply with the law and permit his milk to be tested, cannot be regarded as unreasonable or oppressive. Clearly if the applicant were merely required to affirm that he had done, or to promise to do, those things required by the ordinance, there would be no ground for contending that this part of the ordinance was arbitrary or oppressive. Hence we conclude that, in view of the opportunities for fraud and imposition in the sale of milk, and of the necessity of great precaution on the part of municipal authorities to secure for the people milk that is wholesome, clean and free from disease, the preliminary oath prescribed by the ordinance in question is not an unreasonable requirement.

Section 5 is attacked on the ground that it is a flagrant attempt to interfere with the individual rights of the citizen in the conduct of his lawful business. The first part of that section merely provides that persons offering milk

for sale shall thoroughly wash and wipe their hands and cows' udders before beginning to milk; that they shall not use pails, cans, etc., until they have been thoroughly washed with hot water and soap, and afterwards sterilized with boiling water or steam; that the dairyman shall cover his pails, cans, etc., with sterilized absorbent cotton between two layers of sterilized gauze, through which the milking shall be done. The right to engage in a lawful business which may effect the public health does not carry with it the absolute right to conduct the business in any manner that may please the person so engaged. His right is subject to the paramount right of the state or municipality in which he conducts his business to regulate the business in the interest of the public health. The foregoing portion of section 5 of the ordinance relates solely to the method of handling the milk, in order that it may be free from germs that would render it unfit for human consumption. While the method prescribed may strike the dairyman who has never been accustomed to such care, not only as being unnecessary, but a flagrant invasion of his right to pursue the old established method, which was accompanied by so much disease and death, we see nothing in the foregoing requirements that would justify a holding that the provision complained of is unreasonable and, therefore, invalid.

The latter part of section 5 is as follows: "They (dairymen) must refrain from milking or handling milk in any way, when in themselves, or their families, there is even a suspicion of any contagious or infectious disease, such as smallpox, scarlet fever, diptheria, typhoid, tuberculosis, or the like." In our opinion, this provision should be given a practical construction and read as if the word "reasonable" were inserted before the word "suspicion." The purpose of the provisions was not to permit the dairyman to wait until he was absolutely sure of the fact that he, or some one of his family, had a contagious or infectious disease and then spread the disease throughout the municipality, but to require him to act on such premonitory symptoms as would excite in the mind of an ordinarily prudent person a reasonable suspicion that such disease had been contracted. When so construed, we find nothing in the provision complained of that is unreasonable or oppressive.

Particular complaint is made of sections 8 and 9 of the ordinance, which provide that the milk must not con-

tain over 300,000 bacteria per cubic centimeter, or any pathogenic bacteria of any kind. The case is here without any evidence tending to show that it is practically impossible for the dairyman to furnish milk of the standard required. Since the municipality has the power to prescribe the standard of quality of the milk sold— State v. Campbell, *supra;* Pain v. Boughtwood, L. R. 24 Q. B. Div. 353; People v. Kibler, *supra;* People v. Schaeffer, 41 Hun 23; Commonwealth v. Farren, 9 Allen 489; Commonwealth v. Warren, 160 Mass. 533, 36 N. E. 308; State, Shivers, Prosecutor, v. Newton, 45 N. J. L. 469; Deems v. Baltimore, 80 Md. 164, 26 L. R. A. 541, 45 Am. St. Rep. 339, 30 Alt. 648—we cannot invade its province and hold that the standard thus prescribed is unreasonable, in the absence of clear and convincing evidence that such is the case.

Section 10 relates only to the wagons used in the delivery of the milk. It provides in substance that such wagons shall be furnished with covers and shall be neat and clean, and to that end the interior thereof shall be scrubbed with soap and water at least twice a week. It further provides that the wagons shall be kept neatly painted, and that no vegetables or waste products shall at any time be hauled in any wagon used in the transportation of milk. Particular stress is placed on the alleged arbitrary character of the requirement that the wagon shall be neatly painted. It is a matter of common knowledge that a neatly painted wagon is much less apt to be infected with nocuous germs than one which is permitted to go unpainted for any considerable length of time. Indeed, such a requirement is merely in aid of that cleanliness so essential to the proper handling of an article of food so easily contaminated.

On the whole, we conclude that the ordinance in question was a proper exercise of the police power conferred on the city of Owensboro, and that the trial court erred in holding that the warrant issued pursuant thereto was invalid.

Judgment reversed and cause remanded for proceedings consistent with this opinion.