## Grant v. Leavell, Director of Health.
(Decided April 19, 1935.)

TRABUE, DOOLAN, HELM & HELM and WILLIAM H. CRUTCHER, Jr., for appellant.

MARK BEAUCHAMP, THOMAS A. BALLANTINE and ROBERT P. HOBSON for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This case involves the interpretation and validity of a milk ordinance of the city of Louisville. The parties are in practical agreement as to the facts disclosed by the record being as set out by appellant in brief.

These, so far as material to the question here involved, are that Dr. Grant, a citizen of Louisville, has, since the passage of the ordinance in 1931, built a modern dairy plant on his farm, located on the Jefferson-Oldham county line, and has now applied to the appellee, the health director of the city, for a permit to sell grade A raw milk, produced at this plant, in Louisville, under the provisions of this milk ordinance, which by its terms permits the sale of both pasteurized and raw milk under stated conditions and regulations therein provided. The appellee, as health director of the city of Louisville, has refused to issue appellant the applied for permit required for the sale of grade A raw milk to Louisville consumers.

Dr. Grant's written application for this permit recited that, since the passage of the city's milk ordinance in May, 1931, he had constructed a modern, sanitary

milk plant upon his farm, for which he had procured a duly tested and high-grade herd of milk cows, and had further, in all respects, complied with the provisions of the ordinance, and contends that under its provisions he is entitled to sell and distribute in the city his grade A raw milk produced thereon. The requested permit was refused by the appellee health director upon the grounds that no permits for the sale of grade A raw milk, produced in rural milk plants constructed since the passage of the ordinance, have been issued, for the reason that it is contrary to the policy of the city's health department to grant permits to any more distributors of raw milk produced from plants located outside of the city or in the rural districts of the county than were at that time so operating, as they felt that sufficient raw milk was furnished by them for the few people demanding it.

This milk ordinance of 1931, by its section 16, which is interpreted by the health director as providing for and warranting its adopted policy of thus restricting the sale of raw milk, by refusing the issuance of permits for its sale to all the operators who have constructed rural milk plants since the passage of the ordinance, provides:

"All dairies and milk plants from which milk is supplied to the City of Louisville which are hereafter constructed shall conform in their construction to the requirements of the health officer which shall not be less than the Grade 'A' requirements of this ordinance. No milk plants hereafter constructed beyond the corporate limits of the City of Louisville shall be allowed to supply milk to the City of Louisville except as may be specially permitted by the health officer."

The department's refusal of a permit to appellant for sale of raw milk is rested solely upon the ground that he has constructed his plant since the ordinance was passed and that it is not located within the city, where it would be more accessible for easy and frequent inspection.

The milk ordinance in question is clearly one passed by the city in the exercise of its police power to regulate the sale and distribution of milk, to the end that the health of the community may not be endangered by

the sale to its citizens of milk which is unwholesome and impure. Its restrictive regulations are based upon its recognition of the fact that milk is one of the oldest and most generally used foods, whose total annual production and consumption is steadily increasing, making the matter of its supply one involving and having capacity to hurtfully affect and endanger the welfare and health of a whole community, should it be permitted to become impure, adulterated; or of unwholesome quality.

To the end that the city's milk consumers might be protected against this threat and danger, the ordinance expressly prohibits the sale of impure or adulterated milk or misbranded milk products. It also recognizes that raw milk has been, for a period of time out of mind, sold, and was then being delivered and sold in the city, and that it was a popular and needed food commodity required by many of its citizens, which was being supplied them at the time of the passing of the ordinance by ten or more milk plants located outside of the city.

The city's right, as well as duty, to control by adequate, yet reasonable, regulation the sale and distribution of milk to its citizens is universally upheld, and has frequently been so declared (as is conceded by appellant) by this court and generally. Board of Health of Covington v. Kollman, 156 Ky. 351, 160 S. W. 1052, 49 L. R. A. (N. S.) 354; City of Owensboro v. Evans, 172 Ky. 831, 189 S. W. 1153, 1157.

The ordinance as passed was made responsive to this demand for raw milk, and, recognizing the established commerce therein, it, by its terms, expressly provides for its continued sale under its protective regulations, that only A-grade raw milk should be sold and that it "shall be bottled at the source of production."

Milk, as contended by appellant, being a legitimate article of commerce, any citizen has the right to handle or trade in the commodity, subject only to the limitation imposed by considerations of public welfare. The right to sell milk, unlike that to sell liquor, which is a privilege, should only be restricted or regulated as the safeguarding of the public health may require. 26 C. J. pp. 756, 757. In Hahn v. City of Newport, 175 Ky. 185, 194 S. W. 114, 117, the court, in considering the validity

of an ordinance, purporting to regulate the sale of meats, approved it as being a reasonable regulation, saying:

> "All the authorities agree that so long as the regulation is reasonable it is within the authority of the regulating power to make it. Nor is there any discrimination, as contended to be found in the ordinance. Every one is prohibited from selling meats in the particular manner denounced, but neither appellant nor any other person is prohibited from selling meat within the city in the manner not denounced."

Or as later said in the Evans Case, supra:

> "The right to engage in a lawful business which may affect the public health does not carry with it the absolute right to conduct the business in any manner that may please the person so engaged. His right is subject to the paramount right of the state or municipality in which he conducts his business to regulate the business in the interest of the public health."

The general rule as to regulations in the sale of ordinary articles of commerce, such as milk, is only that they must be reasonable to be valid. A-Loaf Baking Co. v. Pace (Tex. Civ. App.) 19 S. W. (2d) 459; City of Des Moines v. Fowler (Iowa) 255 N. W. 880; Whitney v. Watson et al., 85 N. H. 238, 157 A. 78, 80. In the last-mentioned case, the principles applicable to regulation of the sale of milk were thus stated:

> "Dairy products are normally legitimate subjects of commerce, interference with which is justifiable only so far as the protection of the public health requires. To that extent the Legislature may regulate and limit their sales. Beyond this, the marketing of such products is a matter of right. It is in the interest of the purchasing public as well as of the producer that a license be granted the latter when he has fulfilled the legislative requirements."

The chancellor upheld the action of the appellee in refusing appellant the applied for permit, upon the ground that his interpretation of section 16 of the ordinance warranted his refusal of a permit upon the basis

of the classification made by the health director of dairymen operating milk plants constructed either within the city or before the passage of the ordinance in the rural districts, who as one class should be given permits for raw milk sale, while those operators falling without that favored class, by reason of having either later constructed their milk plants or located them outside the city, were properly to be discriminated against by refusing them permits, and that the same was valid as being in furtherance of and in harmony with the health department's policy of restricting the sale of raw milk, even of A-grade.

The chancellor, though approving such basis of classification as reasonable and sustaining the city's right to even entirely prohibit the sale of raw milk to city consumers, further held that the exception engrafted upon the second sentence of section 16, reading "except as may be specially permitted by the health officer," was invalid, by reason of its being both awkward and objectionable in form and subject to the criticism that it authorized an arbitrary and unreasonable discrimination against the sellers of raw milk generally, by restricting the right of its sale to only those of their number to whom it might be pleasing to the board to grant special permits. This exception he held to be bad, as letting down "too far" the bars against permits, and as being by its very terms a delegation of arbitrary and capricious power to the health director to discriminate improperly in granting or withholding its special permits, without imposing any standard or rule regulating and controlling the right and authority of such inspector to exercise the special permit power. For such reason the chancellor held that the objectionable exception thus added to the second sentence of the section should be deleted, with the result that, when so stricken, the section would provide generally that no permits for the sale of raw milk should thereafter be issued to any rural dairyman who had constructed his plant subsequent to the passage of the ordinance. So interpreting the ordinance, it was adjudged that section 16 thereof was valid, when corrected by the directed deletion, and that appellee was thereunder authorized to refuse the milk permit applied for, and accordingly dismissed appellant's petition seeking an injunction requiring the issuance of a raw milk sale permit to him.

There is thus here presented really but one question for our review, and that is the propriety of the chancellor's ruling in dismissing appellant's petition, as failing to present any ground of right to permit under the ordinance, when validated by the directed deletion of the "exception clause" from this section 16, authorizing the issuance of special permits.

The appellant concedes the city's right under its police power to regulate the sale and distribution of milk, but contends that the ordinance is discriminatory in its terms, and that, when deleted as ordered by the chancellor, it is then transformed into one different in scope and effect from what the council clearly intended and meant to pass. He contends that such is its effect, for the reason that, if only the criticized "exception clause" is stricken from the second sentence of this attacked section No. 16, it then becomes one totally prohibiting the issuance of a raw milk sale permit to any operator of a rural milk plant constructed after the passage of the ordinance. It is manifest that such modfication of it, when only so changed by the chancellor as to give it such prohibitory effect against a whole class of dealers, would clearly contravene the purpose of the city council in the passage of this milk regulation, which, in the form passed, clearly recognized as an approved existing condition that raw milk was then being sold by many rural dairymen to city consumers, and expressly provided that such A-grade milk should continue to be sold by that certain class of then authorized dealers, but their number to be extended only by such other vendors of raw milk operating in later constructed plants located outside the city as might be so favored as to have special permits granted to them by the health director. However, it is to be noted that no rule or standard was prescribed with the giving of this discriminatory power for the regulation or control of its exercise by the director, serving to guard against his arbitrary exercise of this power to give or refuse "special permits" delegated him.

We concur in the conclusion of the chancellor that the criticized exception is for such reason both objectionable and invalid, and, if allowed to stand as a part of section 16 of the ordinance, would render it unconstitutional. On the other hand, it is our opinion that

the too limited extent of the ordered correction, which eliminates only this exception clause from the section, would leave the ordinance such an one as would clearly miscarry the intention of the city legislature in passing it, as the section would deny generally the right of sale of raw milk in the city to any and all operators who had constructed their rural plants after the passage of the ordinance, which makes of the section one which we think it is manifest the council would not have passed. In the case of Commonwealth v. Hatfield Coal Co., 186 Ky. 411, 217 S. W. 125, 130, the court, in passing upon the validity of statute, one section of which was found to be invalid, said:

"But notwithstanding the palpable invalidity of section 20, and its flagrant disregard of constitutional limitations, if it can be stricken from the act, and the remainder of the act upheld, this may be done, because it is well settled that unconstitutional sections and provisions may, under some circumstances, be eliminated from an otherwise valid act, without affecting the validity of its other parts. Cooley's Constitutional Limitations, p. 209; Com. v. Goldburg, 167 Ky. 96, 180 S. W. 68; Rogers v. Jacob, 88 Ky. 502, 11 S. W. 513, 11 Ky. Law Rep. 45; McArthur v. Nelson, 81 Ky. 67; Gayle v. Owen County Court, 83 Ky. 61; Allen v. Louisiana, 103 U. S. 80, 26 L. Ed. 318; Poindexter v. Greenhow, 114 U. S. 270, 5 S. Ct. 903, 962, 29 L. Ed. 185. There is, however, an important exception to the rule, under which the objectionable parts of a legislative act may be rejected without affecting the validity of the remainder of it. The principles controlling the rule as well as the exception are thus stated in Cooley's Constitutional Limitations, p. 210:

" 'Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the Legislature would have passed the one without the other.' "

See, also, as in accord with such announcement of the rule, the cases of Felts, County Attorney, v. Linton, County Judge, 217 Ky. 305, 289 S. W. 312; State Board of Election Commissioners v. Coleman et al., 235 Ky. 24, 29 S. W. (2d) 619; City of Elizabethtown et al. v. Purcell, 219 Ky. 554, 293 S. W. 1096; City of Owensboro v. Hazel, 229 Ky. 752, 17 S. W. (2d) 1031.

Guided by these principles and rules repeatedly announced in the cases cited, relating to the interpretation and construction of statutes, particular parts of which may be found invalid, we are led to conclude in our effort to uphold, in harmony with such rules of construction, the validity of this ordinance—the presumption in favor of which must be indulged in order to uphold and give effect to its salutary purpose—that section 16 may be sustained upon deleting or striking therefrom all of the second one of its two sentences. The section will then provide only that:

> "All dairies and milk plants from which milk is supplied to the City of Louisville which are hereafter constructed shall conform in their construction to the requirements of the health officer which shall not be less than Grade 'A' requirements of this ordinance."

Such modification of the section removes, not only the involved invalid exception affixed to its second sentence, providing for the uncontrolled issuance of special permits, but also avoids the further objection resulting from the chancellor's too limited deletion of the sentence, in that the unstricken portion of it prohibited altogether the sale of raw milk to the city consumers by rural dairymen who have constructed their milk plants subsequent to the passage of the ordinance, and which result, we conclude, was, for the reason above indicated, clearly contrary to the intention of the lawmakers and that they would not have passed the ordinance with such a prohibitory provision.

We are therefore, for the reasons above indicated, of the opinion that the decree of the learned chancellor in directing that only this objectionable exception in sentence 2 of section 16 be deleted and that the plaintiff's petition be dismissed, as coming within the prohibitory provisions of this remaining part of the sen-

tence inhibiting the issuance of raw milk permits to any rural dairymen constructing their milk plants subsequent to the passage of the ordinance, was erroneous, and must for such reason be reversed. Further, we are of the opinion that the decree should be modified so as to eliminate the entire second sentence from section 16 of the ordinance, leaving in effect, for the realization of its salutary intendment, that "all dairies and milk plants from which milk is supplied to the City of Louisville which are hereafter constructed shall conform in their construction to the requirements of the health officer which shall not be less than the Grade 'A' requirements of this ordinance."

This section being so modified, and it appearing and being admitted that the appellant comes within the class of dairymen entitled to receive permits for the sale of grade A raw milk, we conclude that he is for such reason entitled to receive the permit applied for. The judgment is therefore reversed, with instructions to enter judgment for appellant in accordance with the prayer of his petition.