## Pure Milk Producers & Distributors Ass'ns et al. v. Morton et al.

Feb. 10, 1939.

J. A. EDGE and LENA M. CRAIG for appellants.

C. D. ADAMS, WILLIAM A. MINIHAN and ROBERT M. ODEAR for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellants, Pure Milk Producers and Distributors Association, a non-profit corporation, and certain individuals doing business under the name of W. S. Jones & Sons, and P. E. Karaker and others doing business under the name of Southworth & Karaker, as plaintiffs below, brought this suit in the Fayette circuit court against Paul Steele Morton, City Manager of the City of Lexington, and Clyde O. Burton, Police Judge of the City of Lexington, seeking a writ of prohibition to restrain the defendants from prosecuting the plaintiffs in

the police court of the City of Lexington, Kentucky, for the sale and distribution of milk and perhaps other dairy products in the city of Lexington without paying the license fees of $20 and obtaining a license as required by the ordinances of the city.

The plaintiffs assert that the ordinances under which defendants seek to enforce against them, and under which certain prosecutions have been instituted, are void for the following reasons: (1) The City had no legal authority over the subject matter of the ordinances; (2) that the ordinances failed to specify the purpose or purposes for which the license fees are levied as required by section 180 of the Constitution and Section 3175 of the Kentucky Statutes; and (3) that the requirements as to recordation of the ordinances were not complied with.

By subsequent pleadings and stipulations the issues were made, the cause submitted to the chancellor for final judgment, whereupon the chancellor held the ordinances valid and dismissed the plaintiff's petition. This appeal follows.

(1) Sections 3058, 3058-2, of the Kentucky Statutes, authorizes a city of the Second Class to license milk dealers. But it is insisted for the plaintiffs that they are not milk dealers in the sense of that statute because their farms where the milk is produced are outside the corporate limits of Lexington. It is stipulated:

"That the plaintiffs are bona fide farmers of Fayette County and that the milk sold by them is produced by them and a part of their farming operations, and were so, at all times mentioned herein and that in emergency occasions, some of them will borrow or buy from a neighboring farmer and co-plaintiff a few gallons of milk to meet a momentary shortage."

The contention is that plaintiffs have the right to sell the products of their farms in the Lexington market on terms of equality with tobacco, corn, grain, or other farm products without license or hindrance by the City of Lexington by imposing upon them a license fee for so doing, and that under the provisions of Ordinance No. 101 exempting farm products from a license tax, they are immune from the tax on the theory that their dairy products come within the class of farm products.

In support of appellants' position they cite and rely on In re Luther Snyder, 10 Idaho 682, 79 P. 819, 68 L. R. A. 708. In that case, Snyder, who was a farmer, killed a beef and sold the beef in Boise City by retailing it to the inhabitants from door to door. He was prosecuted under an ordinance providing for licensing "peddlers, hawkers and solicitors," and prescribing a penalty for the violation thereof. He questioned the validity of the ordinance and refused to pay the license and was committed to jail and sought release by habeas corpus. The Idaho court held that a farmer engaged in that business with no other trade or occupation, because he slaughters his cattle, hogs or sheep on his farm and retails them in the city, is not a "hawker or peddler" within the ordinary meaning of those words.

We do not think the Idaho case, supra, analogous or applicable to the present case. And we think it is contrary to the weight of authority dealing with such questions even as to the distribution and sale of meat within a city. But conceding, arguendo, that that opinion is sound in the light of the particular subject it deals with, it does not follow that the same rule is applicable in respect of the sale of milk. Under our jurisdiction and practically all others so far as we have ascertained, legislative bodies, state and municipal, may impose upon milk dealers and distributors more stringent rules than perhaps on other food products which are not so susceptible or likely to spread disease and contaminate the public health.

In Shelton v. Shelton, 111 Conn. 433, 150 A. 811, it is held that milk is peculiarly liable to contamination and adulteration. Therefore, in the interest of the public health and safety the regulation of its production, marketing and sale is held to be within the proper exercise of the police power of the state and if there be room for reasonable differences of view as to the legislative prohibition, classification or regulatory provisions, the court will accept the legislative determination, and not impose their own will. See also McQuillen on Municipal Corporations, Vol. 3, section 954 (889), which deals at large with the powers of legislative bodies to place restrictions, regulations, etc., upon the distribution and sale of food products, and particularly the handling, sale and distribution of milk. Section 1067 of the same authority specifically recognizes the right of municipalities to compel vendors of milk to register with health

officers and pay registration fees and prohibit the sale of milk without a permit from the proper authorities. Also in the recent Kentucky case of Grant v. Leavell, 259 Ky. 267, 82 S. W. (2d) 283, 285, there was involved the question of the right of the city of Louisville to control the sale or distribution of milk to its citizens. That case and cases cited therein is conclusive of this question in this jurisdiction. In that opinion, quoting with approval from City of Owensboro v. Evans, 172 Ky. 831, 189 S. W. 1153, 1157, it is said:

> " 'The right to engage in a lawful business which may affect the public health does not carry with it the absolute right to conduct the business in any manner that may please the person so engaged. His right is subject to the paramount right of the state or municipality in which he conducts his business to regulate the business in the interest of the public health.'
>
> "The general rule as to regulations in the sale of ordinary articles of commerce, such as milk, is only that they must be reasonable to be valid. A-Loaf Baking Company v. Pace (Tex. Civ. App.) 19 S. W. (2d) 459; City of Des Moines v. Fowler [218 Iowa 504] 255 N. W. 880; Whitney v. Watson, et al., 85 N. H. 238, 157 A. 78, 80. In the last-mentioned case, the principles applicable to regulation of the sale of milk were thus stated:
>
> " 'Dairy products are normally legitimate subjects of commerce, interference with which is justifiable only so far as the protection of the public health requires. To that extent the Legislature may regulate and limit their sales. Beyond this, the marketing of such products is a matter of right. It is in the interest of the purchasing public as well as of the producer that a license be granted the latter when he has fulfilled the legislative requirements.' "

In the case at bar it is shown in the record that the approximate cost per year of inspecting the dairies and milk plants, taking samples of milk, costs of the Bacteriology Department, making tests and enforcing the milk license ordinances, is $3910, and that if all milk producers who are selling milk in the City of Lexington, and all the persons in the corporation engaged in operating milk plants pay the license required under the ordi-

nance, the total amount of revenue produced therefrom would be only about $1685, which is less than one-half of the costs of enforcing the ordinance. It is thus seen that the license of $20 per year is not unreasonable and comes within the rule quoted above. It follows that there is no merit in the contention that the city of Lexington has no legal authority over the subject matter of the ordinance.

(2) It is next argued that if the city had the right to enact the ordinance, yet it is void for its failure to specify the purpose or purposes for which the license fees are levied as required by Section 180 of the Constitution and Section 3175 of the Kentucky Statutes.

In respect of Section 180 of the Constitution, it has been held in this jurisdiction that license fees are not a "tax" in the sense of that section of the Constitution, and it is not necessary that an ordinance imposing license fees specify the purposes of same and that license fees are authorized by Section 181 of the Constitution. Shugars v. Hamilton, 122 Ky. 606, 92 S. W. 564, 29 Ky. Law Rep. 127, and cases cited therein. However, Section 3175 of the Kentucky Statutes, same being part of the charters of cities of the Second Class, requires all ordinances levying taxes and license fees to specify the purposes of same. Hence, a substantial compliance with this statute must be had.

It is insisted that ordinance No. 370 by which the license fees in question are imposed, does not specify the purposes of the license fees and for that reason it is void for non-compliance with the statute supra. We find that Ordinance No. 370 is one of a series of amendments to Ordinance No. 116, entitled "Ordinance Relating to Occupational or License Taxes," and Section 4 thereof provides that: "All money derived from the payment of the taxes provided for in this ordinance shall be paid into and become a part of the general fund of the city." It is insisted that in enacting the amendatory ordinances to ordinance No. 116, Section 51 of the Constitution and Section 3059 of the Kentucky Statutes were not complied with and, therefore, these ordinances do not become a part of Ordinance No. 116. Section 51 of the Constitution provides that:

"No law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised,

amended, extended or conferred, shall be re-enacted and published at length.''

Section 3059 of the Kentucky Statutes provides that:

"No ordinance shall be amended by providing that designated words thereof be stricken out and others inserted in lieu thereof, but the ordinance or section amended shall be set forth in full as amended.''

Upon examination of the amendatory ordinances in question, as appears from exhibits filed with the record, we find that there was a substantial compliance with the Constitution and Statute, supra. The amendatory Ordinance No. 370, amending and re-enacting Ordinance No. 116, passed December 27, 1932, as amended and re-enacted by Ordinance No. 132, passed February 21, 1933, as amended by Ordinance No. 148, passed May 15, 1933, reads in part as follows:

"Ordinance Number 370.

"An Ordinance to Amend and Re-enact Section 98 of Ordinance Number 116, Passed December 27, 1932, Relating to Licenses of Milk Plants, as Amended and Re-enacted by Ordinance Number 132, Passed February 21, 1933, as Amended by Ordinance Number 148, Passed May 15, 1933.

"Be it ordained by the Board of Commissioners of the City of Lexington:

"Section I. That Section 98 of Ordinance Number 116, passed by the Board of Commissioners on December 27, 1932, as the same is amended by Ordinance Number 132, passed February 21, 1933, be, and the same is hereby amended and re-enacted so that the same, when amended and re-enacted, shall read as follows, to-wit:

"Section 98. Milk Producers, Distributors and Operators of Milk Plants Engaged in the Business of Selling or Distributing Milk or Milk Products.

"Every person who is a milk producer, as defined by Ordinance of the City of Lexington, who is engaged in selling, offering for sale or delivering milk by retail in the City of Lexington shall pay an annual license of $20.00. * * *''

We find that the other amendatory ordinances referred to above amending Ordinance No. 116, were en-

acted in the same manner in respect of requirements of the Statutes and Constitution, supra, as No. 370 quoted above. In Edrington v. Payne, 225 Ky. 86, 7 S. W. (2d) 827, it is held that it is only necessary under expressed mandate of the Constitution that so much of the Act as is revised or amended must be re-enacted or published at length, and we think that in enacting the amendatory ordinances amending Ordinance No. 116, there was a substantial compliance with the Constitution and Statute, supra, and that the amendatory ordinances have become a part of Ordinance No. 116, the same as if they had been written into it when it was adopted.

It is next insisted that the city of Lexington has no properly created general fund and, therefore, the ordinances in question are void because they provide that the monies derived therefrom shall be paid into the general fund.

Taxes and license fees and other revenue collected by a city are primarily for the purpose of paying the general expenses of operation of the city government and constitute primarily what is designated as the "general fund," unless otherwise provided by ordinance or statute. We do not think it necessary that a city specifically set apart or establish by ordinance or otherwise a "general fund."

In the case of Tandy & Farleigh Tobacco Company v. City of Hopkinsville, 174 Ky. 189, 192 S. W. 46, 47, it is held that a levy for the "ordinary current expenses of the county" would be sufficiently specific to satisfy the requirements of section 180 of the Constitution and subsection 12 of section 3290 of the Kentucky Statutes (which section contains the same provision in regard to a levying ordinance as Section 3175 of the Statutes involved in the present case). The language of the ordinance involved in the Hopkinsville case, supra, is as follows: "That said license fees are hereby fixed, and established, imposed and levied for the purpose of, and to be paid into, the general revenue funds of said city."

It is further held in that opinion that if a city could not raise a fund for general purposes without a more particular description of the purpose, it would be required, in advance, to carry the specification of its purpose to an unreasonable and impracticable extent and would not be able to pay an unspecified debt, regardless of its merits or the urgency of its payment. See, also,

Chesapeake, O. & S. W. Railway Company v. Commonwealth, 129 Ky. 318, 108 S. W. 248, 111 S. W. 334, 32 Ky. Law Rep. 1119, 33 Ky. Law Rep. 882. And in Pulaski County v. Watson, 106 Ky. 500, 505, 50 S. W. 861, 21 Ky. Law Rep. 61, the court upheld a county levy of an ad valorem tax "for the purpose of paying claims against the county" as being sufficiently specific. To the same effect, see City of Somerset v. Somerset Banking Company, 109 Ky. 549, 556, 60 S. W. 5, 22 Ky. Law Rep. 1129.

We are cited to no authority, and we know none, holding that a city, county, or other taxing district must specifically create by ordinance, order, or otherwise, a "general fund."

(3) It is further insisted that the ordinance is void for the want of recordation and subsequent publication. However, there is no allegation that the ordinances were not published and it seems that the attack on them is directed more specifically to the fact that the ordinances were not recorded in full or at large by the clerk on the minute book after it had been published and passed as required by the statutes.

Charters of cities of the Second Class were amended and modified by the Acts of 1930, creating city manager form of government. Kentucky Statutes, Section 3235dd-16 et seq. However, all previous laws not inconsistent with the City Manager Form Act are retained and in force. Section 3063, Kentucky Statutes, provides among other things, that the general council shall cause all ordinances passed by them to be *fairly* recorded in the journal of proceedings. Section 3235dd-30, a part of the Acts of 1930, or City Manager form of government of Second Class cities, provides that each ordinance shall be signed by the mayor or two commissioners and recorded before it shall take effect. The language of section 3063 of the Statutes, that ordinances shall be "fairly recorded" in the journal of proceedings, does not indicate that it must be copied in full on the journal, but rather a synopsis or minute made of the passage of the ordinance. 43 C. J. Section 838, page 539.

In Town of Kevil v. Hawthorne, 205 Ky. 426, 265 S. W. 937, we held that where an ordinance had been filed in the ordinance book but not entered in full upon the journal, it was valid.

In Meacham Contracting Company v. Kleiderer, 146 Ky. 441, 142 S. W. 720, this identical question was raised and determined. It is held in that case that the failure of the clerk to enter the ordinance in full upon his record did not render the ordinance invalid, since it had been duly published and passed and all requirements of the Statutes complied with.

It appears that after the ordinances in question were passed they were immediately signed by the Mayor or by two commissioners and then published in full in the official newspaper. Additional copies of the ordinances were printed from the same type upon loose leaf pages and placed in loose leaf binders for use by various city officials, one of these books being designated "Ordinance Book" and is kept in the clerk's office. Briefly stated, it is conceded that all requirements of the Statutes were complied with, except, it is argued that the ordinance should have been recorded in full by the clerk upon his journal or minute book. It appears to us that the statutes and other authorities supra, are conclusive of this question and that it is not necessary to the validity of the ordinances that the clerk should again copy them in full on the minute book.

From what has been said it follows that the ordinances in question are valid and the chancellor did not err in so holding.

Judgment affirmed.

Whole Court sitting.