## EX PARTE JEFF VANCE.

No. 2136. Decided April 17, 1901.

**1. City Ordinances as to Stands, etc., for Hacks, Carriages and Other Vehicles.**

Where the special charter for a city gave the city council full authority over the streets, alleys, etc., of the city, and authorized said council to establish stands for hacks, carriages and other vehicles engaged in carrying goods or passengers for hire, and to prevent the drivers of such hacks, etc., from using other places for their hacks; and, in pursuance of said charter, an ordinance was passed establishing a hack and omnibus stand at a railroad depot in said city, requiring hacks to stand in single file at said stand and prohibiting hackmen, etc., from leaving their vehicles to seek patronage while waiting for employment. Held, in the absence of proof that the location of such stand was clearly an unreasonable exercise of power, it will be presumed that the council made a disposition of the matter fairly and in consonance with the environments; and that requiring the drivers to remain with their hacks was not an invasion of prerogative of the citizen in his right to solicit traffic.

**2. Same—Unjust Discrimination as to Street-Car Conductors, Etc.**

Where the purpose and intent of a city ordinance was to establish omnibus and hack stands, and also stands or stopping places for street-car lines, and to regulate the right to solicit patronage for said vehicles. Held, that, inasmuch as said ordinance prohibits hack and omnibus drivers from leaving their vehicles to solicit patronage, and does not so prohibit street-car conductors and motormen,

that it makes and creates an unjust discrimination against said hack and omnibus drivers, and is therefore unreasonable and void, the parties being engaged in the same business of carrying and transporting passengers and goods.

APPEAL from the District Court of Tarrant. Tried below before Hon. IRBY DUNKLIN.

Appeal from an order and judgment remanding appellant to custody upon habeas corpus proceeding to test the validity of a city ordinance of the city of Fort Worth, for a violation of which appellant had been arrested by the city marshal.

The opinion states the case.

*McLean & Scott* and *C. R. Bowlin,* for relator.—An ordinance to be valid must be reasonable, fair, and impartial, and said ordinance being unreasonable as to the size and location of the hackstand in question, and it being unreasonable to prohibit a man from leaving his hack while on said stand for any legitimate purpose, and it being unreasonable to prohibit him from assisting passengers to and from same, and it being unreasonable to prohibit him from soliciting business or employment in the territory described in said ordinance, and it being partial as to the street-car companies, permitting them to stand a car on Front street, and in permitting them to solicit passengers in all the inhibited territory so far as hacks are concerned, and in permitting them to assist passengers to and from such street cars, said ordinance is therefore unreasonable, unfair, partial, and void. Dillon, Mun. Corp., secs. 319, et seq., pp. 322, 328; Milliken v. Weatherford, 54 Texas, 368; Cooley, Const. Lim., 4 ed., 246; City of St. Louis v. Roche, 31 S. W. Rep., 915; City of Austin v. City Cemetery Assn., 28 S. W. Rep., 528; City of Helena v. Dwyer, 42 S. W. Rep., 1071; Ex Parte McCarver, 39 Texas Crim. Rep., 448; Ex Parte Batis, 40 Texas Crim. Rep., 112; Gustafen v. State, 43 Law. Rep. Ann., 615; City of St. Louis v. Russell 22 S. W. Rep., 470, and citations.

*W. D. Williams,* City Attorney, and *Rob't A. John,* Assistant Attorney-General, for respondent.—The ordinance having been passed pursuant to an express authority, it can not be impeached as unreasonable. Ex Parte Batis, 44 S. W. Rep., 1045; Dillon, Mun. Corp., sec. 328; 1 Thomp., Corp., sec. 1021; 1 Beach., Pub. Corp., sec. 512; Coal Float v. Jeffersonville, 112 Ind., 15; Brooklyn v. Bresslyn, 57 N. Y., 596; State v. Clark, 54 Mo., 17; St. Paul v. Colter, 12 Minn., 48; Haynes v. Cape May, 50 N. J. L., 55.

The ordinance establishing the depot hackstands in Fort Worth and forbidding hacks waiting for employment to stand at other places within certain prescribed limits was a reasonable exercise of the police power conferred by the Legislature upon the city council of said city. 1 Thomp., Corp., sec. 1021; 2 Beach., Pub. Corp., sec. 994; Commonwealth v. Robertson, 5 Cush. (Mass.), 438.

The subject of the ordinance is a matter of local concern, affecting the citizens of Fort Worth alone, and has been entrusted by the Legislature to the discretion of its city council, and the court should not substitute its opinion for the judgment of the council which is peculiarly cognizant of the situation, of the demands made upon the streets by the travel over the same, and of the inconveniences, disturbances, and dangers occasioned by the uncontrolled use of said streets by a clamorous mob of drivers of public vehicles, struggling and contesting for public patronage. 1 Thomp., Corp., sec. 1021; 1 Beach., Pub. Corp., sec. 518; Tiedeman, Mun. Corp., sec. 151, p. 268.

The ordinance in question in this case treats alike all persons subject to its provisions under similar conditions, giving the same privileges to each and imposing the same penalties and burdens, and it is not subject to objection for discrimination. Campbell v. Cook, 86 Texas, 630; Insurance Co. v. Chowning, 86 Texas, 654; Tiedeman, Mun. Corp., sec. 152; Fahey v. State, 27 Texas Crim. App., 146; Railway v. Mackey, 127 U. S., 205; Budd v. New York, 143 U. S., 533; Chicago v. Cutts, 94 U. S., 155; Dowe v. Beiddelman, 125 U. S., 680; Hing v. Crowley, 113 U. S., 703; Barbier v. Connolly, 113 U. S., 27; Railway v. Richmond, 96 U. S., 521; Hayes v. Missouri, 120 U. S., 68; Sawyer v. Davis, 136 Mass., 239; Louisiana v. Schlemmer, 10 Law. Rep. Ann., 135.

The ordinance in question in this case subjects to the same restrictions all persons engaged in the same business under the same circumstances, and gives to each such person the same privileges under the same conditions, and said ordinance is not open to objection for discrimination. Neither would it be discriminating legislation in any invidious sense, were branches of the same business transacted under different circumstances and conditions, surrounded by different restrictions and granted different privileges. Hing v. Crowley, 113 U. S., 703; Barbier v. Connolly, 113 U. S., 27; Watertown v. Mayo, 109 Mass., 315; Railway v. Beckwith, 129 U. S., 26; Campbell v. Cook, 86 Texas, 630; People v. Wright, 70 Ill., 388; McCandless v. Richmond, 18 Law. Rep. Ann., 445; Safety Co. v. Railway, 14 Law. Rep. Ann., 579; Liberman v. State, 26 Neb., 464; State v. Indiana, 18 Law. Rep. Ann., 502; Iowa v. Schader, 20 Law. Rep. Ann., 355; Railway v. Merrill, 40 Kan., 404; Railway v. Randell, 70 Ga., 304; State v. Gibson, 36 Ind., 389; State v. Harrison, 63 N. C., 451; State v. Reinhart, 63 N. C., 547; Pace v. Allen, 106 U. S., 583.

HENDERSON, JUDGE.—Appellant sued out a writ of habeas corpus before Judge Dunklin of the Forty-eighth Judicial District of Tarrant County, Texas, to test the validity of certain ordinances of the city of Fort Worth regulating omnibuses and other vehicles engaged in carrying goods and passengers for hire in the city of Fort Worth and establishing stands for same. The district judge held the ordinances a legal exercises of the powers conferred by the charter of said city, and

remanded relator, Vance, to the custody of, the marshal to answer to the complaint against him in said corporation court, charging him with a violation of said ordinance; and from said order relator prosecutes this appeal. It appears from the record that the city of Fort Worth is incorporated under a special charter. See Special Laws of 1899. Sections 58, 59, and 148 of said charter give the city council full authority over the streets, alleys, crossings, and highways of said city and authorize the city council to establish stands for hacks, carriages, and other vehicles engaged in carrying goods or passengers for hire; and to prevent the drivers of such hacks, etc., from using other places as stands for their hacks. In pursuance of this authority, the city council, by ordinance, established a hack and omnibus stand at the Texas & Pacific depot in said city, on the west side of said depot and across what is known as the Al. Haynes' triangle, said stand being just west of the street-car line, which runs from the lower end of North Main Street to the north end of South Main Street. Said hackstand is about fifty feet from the sidewalk curbing of the depot building and runs across its front some 200 feet. Hacks are required to take their stand here in single file, and not at any other place around or about said depot. Hackmen are required to remain with their hacks while waiting for employment, and are not permitted to leave their vehicles either to solicit employment or to assist passengers to or from their vehicles; and runners or drummers for vehicles or hotels are inhibited from using the space between the depot and said hackstand, or any sidewalk adjoining said depot, or at the corner of any street within two blocks of said building, for the purpose of soliciting patronage. The ordinance also provides that the street car running on said street shall stop only in front of the west approach to the depot, for the purpose of taking passengers; and that the other car line is authorized to stop its car in front of the north approach, and only one car at a time shall be kept waiting for passengers at either of said places. There is a great deal of testimony showing the conditions surrounding said depot building, the number of trains arriving and departing, the number of persons using the thoroughfares, and the business conducted on the streets and thoroughfares adjacent and immediately surrounding the depot.

Appellant insists that the ordinance is unreasonable, in-that the place designated in said ordinance is wholly unsuited for the purpose of a hackstand, it not being sufficient in size to accommodate the number of vehicles in carrying goods and passengers to and from said depot; and that said stand is too remote from the depot building for the convenience of the traveling public, and on account of the crowded condition of the thoroughfare it is difficult and dangerous for the traveling public to get to the hacks and vehicles, and that it is unreasonable in requiring persons in charge of hacks to remain with them while soliciting patronage, and which inhibits them from going to assist passengers from the depot to the hack. And that it is also unreasonable in inhibiting such hack-

drivers from procuring others to go across the space to the depot to
solicit business for them. And it is also unreasonable in that it dis-
criminates in favor of the street-car lines, in that it authorizes them
to stand nearer the depot and between the hackstand and the said depot
building. It is conceded that appellant had violated the provisions of
the ordinance. The ordinance here passed was in pursuance of an ex-
press grant of power from the Legislature in the charter of incorpora-
tion. According to some of the authorities, the courts can not question
the reasonableness of such an ordinance. 1 Thomp., Corp., sec. 1021.
This, we take it, however, refers to cases where the mode of the exer-
cise of the power is prescribed, or the Legislature has acted directly
on the subject. Dillon, Mun. Corp., sec. 328, note 1. Under the case
here presented, we have no doubt that the reasonability of the exercise
of the power of the municipality in fixing a stand for hacks and other
vehicles for the transportation of goods and passengers is a question
for the courts to determine. But the doctrine is, that the courts are
not authorized to declare an ordinance unreasonable and void, unless
its unreasonableness shall clearly appear. Ex Parte Batis, 40 Texas
Crim. Rep., 112; Thomp., Corp., sec. 1021, supra; St. Louis v. Weber,
44 Mo., 547. The matter of the regulation of hacks, omnibuses, and
vehicles for the carriage and transportation of freight and passengers
in cities has frequently been before the courts and it is generally con-
ceded this right is peculiarly within the power of the municipality, by
ordinances passed for that purpose. Commonwealth v. Stodder, 2
Cush., 562; Commonwealth v. Gage, 114 Mass., 328; City of St. Paul
v. Smith, 27 Minn., 364, 7 N. W. Rep., 734. It is presumed that the
municipality, which is intrusted with the public safety and convenience
of travelers, is the best judge of the conditions and environments, and
that it will not act in an unjust or oppressive manner, but for the good
of the whole community. Testing the ordinance here passed by the rule
heretofore laid down, it does not occur to us that it is shown to be
unreasonable on the ground that the stand is too remote from the depot
or that it is too limited in space, nor that it is subject to the criticism
that the ordinance in question discriminates between the street-car line
and the hacks as to their respective stands. The street-car line was
a fixture, and, if the hacks had been brought between that and the
depot, it might have involved an encroachment on the street that would
have been detrimental to the general public. At any rate, the line had
to be drawn somewhere, and in the absence of proof that the location
of the stand was clearly an unreasonable exercise of power, we must
assume that the council made a disposition of this matter fairly and
in consonance with the environments. Nor do we think that the action
of the council in requiring drivers of hacks, etc., to remain with them
while waiting for employment, and inhibiting them from trespassing on
the thoroughfares and soliciting patronage, was an invasion of the pre-
rogative of the citizen in his right to solicit traffic. No doubt this exer-
cise of power on the part of the council was suggested by a disposition

to avoid noise and clamor so often occurring between hackmen in their eager solicitation for custom, and thus preventing disturbances of the peace upon the public thoroughfares surrounding the depot. Nor do we understand, as is insisted upon by counsel for appellant, that the ordinance requires hackmen to remain on their carriages, and not to alight therefrom while waiting for employment. The language of the ordinance is that they must remain with their vehicles. This evidently means at or near, and there is nothing in the ordinance to prevent them, after they have once been employed, from assisting their patrons in getting into their vehicles.

However, there is another question raised by appellant, which we regard as the most serious question in the case; that is, does the ordinance discriminate between hack-drivers and others, including street-car conductors, in regard to the solicitation of patronage at and about the depot? Appellant contends that it does, and that it requires him and others in like employment to remain with their vehicles while waiting at the depot, and it makes no such requirement of street-car conductors and motormen. We understand the city contends that the ordinance makes no such discrimination, but, if it did, that it is not such class discrimination as would render the ordinance invalid as being unreasonable. A reference to the ordinance shows that the purpose and intent of the same was to establish omnibus and hack stands, also to establish stands or stopping-places on the two street-car lines running near the depot, and to regulate the right to solicit employment for vehicles, hotels, etc., at and about said depot. The first four sections relate to omnibuses, hacks, carriages, and other vehicles engaged in carrying goods or passengers for hire in the city of Fort Worth, and fixing a stand for such vehicles. Section 2 provides that each person in charge of any vehicle waiting at the aforesaid stand shall remain constantly with his vehicle, and no such person shall leave his vehicle, either to solicit employment, or to assist passengers to or from his vehicle. Section 6 provides the stand or place of stopping for the street cars, and forbids motormen or conductors of street cars, or any other person, to stop any street car, or hold same, while waiting for, soliciting, or receiving passengers, except the two places mentioned. Now, we think it is a fair construction that the first four sections of the ordinance in question were not intended to comprehend street cars, and the use of the term "other vehicles" in said sections was intended to apply to other wheeled vehicles, except street cars, which are separately provided for. If we be correct in this, then it follows that it is unlawful for any driver of any such vehicle to leave his vehicle and go anywhere else along the walks and thoroughfares adjacent to the depot to solicit patronage for his conveyance, and if he does so he is liable to punishment. But as to motormen and conductors of street cars there is no such provision. Though they are required to hold their cars while waiting for, soliciting, or receiving passengers at the two specified places, yet they are not required to remain with their cars, as is the

case with hackmen. But it is said that section 5 makes it unlawful for any person, whether hack-driver, street-car conductor, or others, to solicit custom at or about the depot building. An examination of this section shows that the limitation is against any person soliciting business on any sidewalk adjoining said depot building, or at the crossing of any street within two blocks of said building. So, if we were even to hold that the use of the term, in this connection, "other vehicles," includes street cars, still the limitation is not everywhere about the depot building, but only on the sidewalks and street crossings. So there is no inhibition as to the streets, depot building, or plazas, such as the Al. Haynes' triangle, or the open space between the street-car line and the depot, which is not a sidewalk. We do not think this section 5 embraces street cars; for, as said before, street cars were not mentioned until section 6 was enacted, "and other vehicles," in our opinion, merely refers to such vehicles, other than street cars, which are subsequently provided for. But concede that "other vehicles" does include street cars; street-car men are not required, in soliciting patronage, to remain with their vehicles, as is the case with hackmen. From any point of view, we believe there is a clear discrimination against hackmen, omnibuses, etc., and in favor of street-car men. True, these represent different characters of vehicles, but they belong to the same general class—that is, of carriers of passengers for hire; and there is more or less competition between them, so their rights as to the solicitation of custom should be equal. It may be, in the passage of the ordinance, it was not intended to discriminate or produce an inequality; but, to our minds, a fair construction of the ordinance in question demonstrates that such inequality is created by its terms. We recognize the principle that "the discriminations which are open to objection are those where persons engaged in the same business are subject to different restrictions, or are held entitled to different privileges under the same conditions, and that it is only in such cases that the discrimination can be said to impair that equal right which all can claim in the enforcement of the laws." Soon Hing v. Crowley, 113 U. S., 709, 5 Sup. Ct., 730, 28 Law. Ed., 1145. But, as stated, the parties here were engaged in the same business, but the ordinance subjects them to different restrictions, and gives to street-car men and their employes superior privileges to those authorized to be exercised by hackmen and those running that character of vehicles. See Ragio v. State, 86 Tenn., 272.

We accordingly hold that the ordinance, because it discriminates against hackmen, etc., in their right to solicit patronage, is unreasonable; and the judgment of the lower court is reversed, and the relator ordered discharged, and the costs of this court taxed against him.

*Relator discharged.*