### CITY OF GREENVILLE v. PRATT et al.
### No. 13974.

Court of Civil Appeals of Texas. Dallas.
July 30, 1948.

Rehearing Denied Oct. 8, 1948.

180

Joseph F. Nichols, of Greenville, for appellant.

Allen Clark, of Greenville, for appellees.

YOUNG, Justice.

The appeal was from an order of temporary injunction restraining defendant municipality from enforcing two ordinances, cumulative in effect, of date October 29, 1946 and November 20, 1947, involving the sale and delivery of meat and meat products within the City of Greenville (a Home Rule municipal corporation).

These ordinances in effect prohibit the sale in Greenville of meat for human consumption unless from animals that have been inspected, slaughtered and processed through its official abattoir, or, if slaughtered elsewhere, do not bear the inspection stamp or legend required by the Department of Agriculture Bureau of Animal Industry Order 211 and amendments thereto. Section 4 of the 1947 ordinance provides: "It shall be unlawful for any person to bring into, offer for sale, to sell or deliver in the City any meat, meat by-products or meat food products which have not been prepared or processed from animal and bearing official inspection legends or marks as follows: (a) If such animal has not been slaughtered and such products not prepared or processed at the local official abattoir and bearing the official inspection mark and legend of such abattoir. (b) If such animal has been slaughtered and such product has been prepared and processed elsewhere than at the local official abattoir; if such animal has not been slaughtered or such product has not been prepared or processed under and according to the 'Meat Inspection Regulations of the United States Department of Agriculture' and which does not bear or show the official U. S. inspection mark or legend of the establishment where same was slaughtered, prepared or processed, * * *."

The suit for injunction was initiated by R. E. Pratt, a resident of Hopkins County, in which Jack and Sam Estes of Tarrant County intervened; and all parties just named are engaged in the business of slaughtering beef and other animals, also the processing and sale of meat and meat products in the counties of their residence and area adjoining; it being stipulated and agreed between counsel that Greenville City officers were threatening to arrest agents and employees of plaintiff and interveners under the foregoing ordinances.

For cause of action plaintiff Pratt alleged that "he is now and for several years has been engaged in the business of slaughtering beef and other animals and the processing and sale of meat and meat products and has a modern, up to date, clean and sanitary plant in the City of Sulphur Springs and all the animals slaughtered by him are inspected by the city inspector of the City of Sulphur Springs, who is a duly capable and qualified veterinary doctor and

surgeon and that his plant complies in all respects with the sanitary requirements necessary to keep said meat and keep said meat products clean, healthful, and free from contamination and that he has a prosperous business in the sale of said products in Hopkins, Hunt and adjoining counties; that within the last few days, prior to the filing of this suit, the defendant has passed an ordinance, the terms of which are unknown to the plaintiff but which the plaintiff is informed purports to prohibit the sale of all meats in the City of Greenville unless Federally inspected or unless the animals are slaughtered within the city limits of the City of Greenville and provides a penalty for the violation of the same; that said ordinance is unreasonable and void and in restraint of trade, is without legal effect and has no legal basis and is beyond the police and other powers of the defendant and the effect is to establish a tariff wall and creates a barrier against all processors of meat beyond the limits of the City of Greenville; that the defendant is threatening to arrest and prosecute plaintiff and his employees and to prohibit the sale of his products in the City of Greenville and that the effect of their action and contemplated action is and will be to deprive the plaintiff of his property and to damage and destroy his business and plaintiff has no adequate remedy at law and will suffer irreparable damage unless the defendant is enjoined * * *." The pleading of Estes Bros., interveners, contained similar allegations and charges as to their meat packing plant and business located in Tarrant County.

The Texas Meat Inspection Law enacted by the 49th Legislature (1945) appears under Title 71, "Health—Public", art. 4476—3, Vernon's Ann.Civ.Sts. Save as to secs. 15 to 19, published as art. 719d, Vernon's Penal Code, the Act is inoperative, due to failure on part of the Legislature to appropriate money for its administration. Its purpose is to "prohibit and prevent the sale of food for human consumption of meat from animals where said animals suffer from diseases communicable to human beings, and to provide adequate and *uniform* regulations for inspection of meat and meat products intended for human consumption, thereby protecting the public health." (Emphasis added.)

Its enforcement was to be supervised by the State Board of Health through a chief health officer, whose duty it became to promulgate rules, regulations and standards approximating the standard of meat inspection required by United States Department of Agriculture Bureau of Animal Industry Order 211, and amendments; and meat vendors were to be denied permits or use of label "Texas State Approved" relative to animals slaughtered or carcasses processed, handled and sold, unless in conformity with State regulations as authorized by the Act.

Viewed as a whole, aside from Penal sections 15 to 19, the only features of the Act deemed of any present significance are these: (1) Its implied objective is a standard of inspection relative to meats and meat products sold in Texas for human consumption that is equivalent to current requirements and regulations of the Federal Bureau of Animal Industry Order 211, as revised; and (2) any Texas municipality is authorized thereunder to make mandatory its provisions "by adopting any ordinance to that effect and by providing the necessary facilities for inspection and for the enforcement * * *." Sec. 12, art. 4476—3. It is to be observed that the law just cited does not prohibit the sale by dealers of properly inspected meats, though not bearing the "Texas State Approved" stamp or label; and that neither of appellant's two ordinances requires that meats from animals slaughtered, prepared and sold through its official abattoir shall be Federally inspected.

Appellant's 1946 ordinance adopted and made a part thereof the whole of art. 4476—3; further authorizing the establishment of an official abattoir which has been constructed within the city's outer zone according to required specifications; and its operation under supervision of the county health unit has heretofore been given over by the City Council to a "grantee operator" under exclusive rights for a term not exceeding thirty years. By sec. 9 thereof the City of Greenville recognizes that the State

of Texas is not enforcing the provisions of art. 4476—3 and recites that until the State Health Department "actively inaugurates" such law, the County Health unit shall provide a suitable stamp known as "Greenville Inspected," which should be used in the place of the stamp required and known as "Texas State Approved Establishment No. ————." The Sulphur Springs (Hopkins County) meat ordinance, in evidence, was similar to the foregoing Greenville law in authorizing abattoirs of a construction approved by city health officers and prohibiting sale of meats unless from animals slaughtered, processed and handled under municipal supervision; providing, however, for the "passing" by city inspectors of all meats brought in from outside of Hopkins County, slaughtered "under regulations similar to those contained in this ordinance." The City of Fort Worth ordinance, in evidence, provides (sec. 17) that "It shall be unlawful for any person to sell, keep or expose for sale or have in possession any carcass or part thereof, upon each primal part of which there has not been placed an inspector's mark showing that the same has been inspected and passed for food purposes by the Bureau of Animal Industry of the United States Department of Agriculture, or by the City of Fort Worth, or in lieu of an inspector's mark the house mark of the official establishment in which said animal was killed."

■ Undoubtedly appellant (a Home Rule city) has ample authority under its delegated police powers to make and enforce any measure necessarily incident to community welfare. Art. 1175, secs. 19, 34; art. 1015, secs. 5, 7, 31. On the other hand, meats and meat products "are legitimate subjects of commerce and the right to sell them should not be abridged by legislative bodies further than reasonably to protect and safeguard the public health." Prescott v. City of Borger, Tex.Civ.App., 158 S.W.2d 578, 581, writ refused; Grant v. Leavell, 259 Ky. 267, 82 S.W.2d 283. Ordinance restrictions laid on the right of those of the same class to pursue a lawful calling must be uniform in effect; in other words, as to those of a like class, there must be no discrimination. An ordinance cannot penalize one, and for the same act done by another under similar circumstances impose no penalty. Town of Clinton v. Standard Oil Co., 193 N.C. 432, 137 S.E. 183 and authorities; McQuillin, Municipal Corporations, Second Ed., vol. 2, sec. 775. "* * * The discriminations which are open to objection are those where persons engaged in the same business are subject to different restrictions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the laws." Soon Hing v. Crowley, 113 U.S. 703, 5 S.Ct. 730, 733, 28 L.Ed. 1145; Ex parte Vance, 42 Tex.Cr.R. 619, 62 S.W. 568.

■ Tested by above well settled principles, these ordinances would appear unduly oppressive and discriminatory on their face; imposing, as they do, the requirement of Federal inspection on meats of outside vendors—a burden not required of meats from animals slaughtered through appellant's official abattoir. Although its avowed standard of inspection is that set by the United States Department of Agriculture, the Greenville inspected meats do not bear the Federal stamp; in which situation we do not think appellant's officials can lawfully exclude meats passed by health authorities of other cities whose inspection standards, before and after slaughter, may be recognized as equal to its own. In principle, the instant case is ruled by City of Dallas v. City Packing Co., Tex.Civ.App., 86 S.W.2d 60, 62, where the trial court, upon hearing, found that the meat inspection standard of the City of Fort Worth was equal to that maintained by the United States Department of Agriculture. The Dallas ordinance had prohibited the sale of meats from specified animals not having "the meat inspection brand or other mark of identification of the Board of Health of the City of Dallas, the meat inspection brand or mark of identification of the United States Department of Agriculture, or the meat inspection brand of identification of such municipality whose meat inspection standard is equal to that maintained by the United States Department of Agriculture and recognized by the Board of Health of the City of Dallas." This court, through Chief Justice Jones pointed out

the impracticability of subjecting the meats and products of City Packing Company (an outside concern) to a regular visual inspection by the Dallas Board of Health, as to do so would require the presence of several inspectors during actual opertion. Significance was given to language of the local ordinance, viz.: "and recognized by the Board of Health of the City of Dallas"; the phrase being defined as meaning "that the board of health is primarily to determine whether the standard of inspection of the City of Fort Worth is equal to the standard maintained by the United States Department of Agriculture, and if it is found to be such standard, then it is clearly the duty of the board of health to give official recognition to the inspection brand of the city of Fort Worth, and not to interfere with the sale of meat or meat products bearing such brand of inspection."

On the facts, intervener Sam Estes testified that no animals were slaughtered through his own plant, dealing in meat carcasses purchased only from established packing houses that had been either Federally inspected or by the City of Fort Worth. Animals slaughtered and meats vended by plaintiff Pratt were subjected to the Sulphur Springs health ordinances already mentioned, under supervision and inspection of Dr. Wilkins, a graduate veterinarian; Dr. Ralph Jenks, appellant's Director of Health, testifying that he had not theretofore been called on to condemn any meats sold by either Estes Bros. or Pratt. The effect of his testimony was that, perforce of the ordinances, he would refuse to "pass" meats of appellees, though otherwise wholesome, unless bearing the Federal stamp or were from animals slaughtered and handled through its established abattoir.

As has already been pointed out; we do not think that appellant can reasonably impose on intrastate dealers the added expense and inconvenience of actual Federal inspection, at the same time merely requiring the equivalent of such Federal standard at its local official establishment. A further excerpt from the City Packing Company case, supra, is equally applicable here, Dr. Jenks occupying the same position as did Dr. Bass, the Dallas Director of Health. This court then said: "*To such official is committed the power of determining whether the inspection made by another city in Texas measures up to the inspection standard of the United States Department of Agriculture.* This is a power that he cannot exercise arbitrarily, but must exercise fairly and judiciously. The ordinance in question does not and could not have given such officer the right to exclude from the trade territory of the city of Dallas meat that bears the inspection brand of a sister city that is equal to the inspection required of the interstate packers by the Agricultural Department of the United States, for meat carrying such a brand of inspection is recognized by the terms of the ordinance to be wholesome for consumption." (Emphasis added.)

The controlling issue implicit in the sentence above emphasized is for determination by the court on final trial. Understandably, the facts on such issues have not been fully developed at the present hearing; and hence the trial court was warranted in restraining enforcement of the ordinances in question until trial to the merits. The order appealed from is therefore in all respects affirmed.

### On Rehearing.

That part of original opinion reciting that operation of the Greenville abattoir had been given over to a "grantee operator" under exclusive rights for a term not exceeding thirty years is hereby withdrawn. As pointed out by appellee, Greenville's ordinance authorizes the City Council to grant such a franchise but there is nothing in the record to indicate that this has been done. Otherwise the motion for rehearing is overruled.