**HOUSTON TRANSIT COMPANY,**
Appellant,

v.

**Alfred Paul FARRACK, Appellee.**

No. 14743.

Court of Civil Appeals of Texas.

Houston.

May 5, 1966.

Roger R. Wright, Houston, and Baker, Botts, Shepherd & Coates, Houston, of counsel, for appellant.

W. James Kronzer and Robert L. Steely, Houston, and Brown, Kronzer, Abraham, Watkins & Steely, Houston, of counsel, for appellee.

WERLEIN, Justice.

Appellee, Alfred Paul Farrack, an employee of appellant, sued appellant to recover damages for personal injuries sustained by him as a result of being crushed between a parked truck owned by appellant and a bus owned and operated by it. From the judgment of the court based on the jury verdict appellant has perfected its appeal.

The truck at the time of the injury to appellee was parked facing west, close to the right hand curb of Sunset Boulevard in Houston, and was being used for the purpose of trimming tree branches overhanging the Boulevard in about the 2000 block thereof. At about 10 o'clock on the morning of October 12, 1959, appellant's bus which was being operated in a westerly direction on Sunset Boulevard by a student bus driver under the instruction of one Hartsfield, appellant's regular bus driver, approached to about 10 feet to the rear of the truck where it stopped facing west in the lane next to the esplanade which separates traffic moving in an easterly direction on Sunset Boulevard from traffic moving in a westerly direction thereon. Appellee, who had been picking up and placing on the truck branches which an accompanying city employee had cut, and who was standing on the left side of the truck with his back thereto, motioned the bus to pass. Thereupon the driver of the bus started the bus, driving the same at about 5 miles per hour between the north curb of the esplanade, and the parked truck. After about 20 feet of the bus had passed appellee without incident he was pinned between the right side of the bus and the flat bed of the truck, and received serious injuries.

The jury found in answer to Special Issues Nos. 3, 4 and 5 that while passing the parked truck on the occasion in question the operator of the bus changed the course and direction of the bus without first ascertaining that such movement could be made in safety, and that such movement was negligence, and that such negligence was a proximate cause of the occurrence made the basis of the suit. To Special Issue No. 6 the jury found that while passing the parked truck on the occasion in question the operator of the bus did not turn the bus to the right when such would not have been done by a reasonably prudent person. Having thus answered Special Issue No. 6, the jury did not answer Special Issue No. 7 inquiring as to whether the act of turning was a proximate cause of the occurrence in question. Appellant complains that the court erred in permitting appellee a double submission of the same theory of recovery of liability inasmuch as Special Issues Nos. 3, 4 and 5 submit the same theory of liability as Special Issues Nos. 6 and 7, and also that the court erred in entering judgment on the verdict because of a fatal conflict in the answers to said two sets of issues.

The evidence shows that there was ample space between the north curb of the esplanade and the truck for the bus to have passed without striking appellee who was standing with his back to the truck and facing the passing bus, had the latter proceeded straight ahead with its left wheels in close proximity to the esplanade curb. Since some 20 feet of the bus, which was approximately 34 feet long, safely passed appellee, it seems evident that the collision between the side of the bus and appellee occurred as a result of the bus driver turning the bus to the right while passing the parked truck, or as a result of the bus being driven at an angle away from the esplanade and toward the north curb of Sunset Boulevard, thus in either case narrowing the space between the bus and the truck. The jury did not find that there was no turn to the right by the bus at any time while passing, but that there was no turn

to the right *at a time* when a prudent person would not have turned the bus to the right. The jury found, however, that the operator of the bus did change the course and direction of the bus while passing the truck, *without first ascertaining* that such movement could be made in safety.

It is our view that a careful analysis of the two sets of issues will disclose that they are not making an identical inquiry of the jury, and that there is no factual duplicity or undue emphasis resulting from such submission. Appellant asserts in its brief that the evidence, even taken in the light most favorable to the plaintiff, shows only a gradual movement of the bus to the right. If we assume the correctness of such statement, although there is evidence to the contrary, it is not believed that the jurors were so misled by the inquiries made in Special Issues Nos. 6 and 7 as to prompt them to affirmatively answer Special Issues 3, 4 and 5 as they did. It seems probable that the jury found that there was a movement of the bus to the right, and that such movement constituted a change in the course and direction of the bus that was negligence, rather than the mere turn to the right inquired about in Special Issue No. 6.

We are also of the opinion that appellee was entitled to a statutory submission of its theory of the case as well as a common law submission, even though the two sets of issues are somewhat similar. In Texas & N. O. R. Co. v. Day, 159 Tex. 101, 316 S.W.2d 402, 408, the court made the following statement: "Obviously, petitioner has not had a proper submission of its defenses under Article 6701d. Submission of petitioner's common-law defense of failure of the truck operator to keep a proper lookout did not satisfy the requirements for submission of the statutory defenses."

Special Issue No. 6 is a common-law submission of negligence on the part of the operator of the bus in turning the bus to the right when a reasonably prudent person would not have done so. Special Issue No. 3, on the other hand, is a statutory submission. Section 68(a), Article 6701d, Vernon's Ann.Tex.St., provides, among other things, that no person shall turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with safety. The two issues are not mutually coextensive. In order to answer Special Issue No. 3 as it did, the jury had to find that the operator of the bus changed its course and direction without first ascertaining that such movement could be made in safety, whereas Special Issue No. 6 merely inquires as to whether the operator turned the bus to the right when it would not have been done by a reasonably prudent person. The jury probably was of the opinion, as shown by its answers, that the driver made the change in the course and direction of the bus without first ascertaining that it could be done in safety, and that such conduct was negligence, whereas the mere turn of the bus to the right at some time while passing the truck, was not negligence. In other words, the turn in itself was not the result of negligence but the change in course and direction without first ascertaining that such change in the course and direction of the bus could be made in safety, did constitute negligence.

With respect to plaintiff being entitled to a common-law and a statutory submission even though the two sets of issues are substantially similar, see also Lubbock Bus Co. v. Pearson, Tex.Civ.App.1953, 266 S.W.2d 439, writ ref., n. r. e.; Dallas Railway & Terminal Company v. Black, 1953, 152 Tex. 343, 257 S.W.2d 416, 421; Airline Motor Coaches v. Guidry, Tex.Civ.App., 241 S.W. 2d 203, 208, writ ref., n. r. e. It is also our view that the jury was in all probability not misled by the submission of the two sets of issues, and that appellant has failed to show that such submission, if error, was such as was reasonably calculated to cause and probably did cause the rendition of an improper verdict and judgment in the case. Rule 434, Texas Rules of Civil Procedure.

See also Holmes v. J. C. Penney Co., Inc., Tex.Sup.1964, 382 S.W.2d 472, 474.

■ We are of the opinion that there is no necessary conflict between the answers of the jury in response to the two sets of issues. It is the duty of the trial court to reconcile apparent conflicts in the jury's findings, if this can be reasonably done. Ford v. Carpenter, 1949, 147 Tex. 447, 216 S.W.2d 558. In the Guidry case, supra, the jury found that one Mrs. Bordages failed to give an adequate or sufficient signal of her intention to turn at the time and on the occasion in question, but they also found that she did not fail to give a visible signal of her intention to turn. The former affirmative finding was in answer to a common-law submission whereas the latter involved a statutory obligation. The Court of Civil Appeals in such case said:

" 'Statutory requirements with respect to the operation of motor vehicles do not abrogate the common-law duties of the owners or operators thereof with respect to persons or property on the highways, but prescribe rules of conduct in addition to, or in excess of, common-law requirements, and a lack of ordinary care is not excused by the circumstance that all expressed statutory requirements have been complied with.' "

See also Traywick v. Goodrich, Tex.Sup. 1963, 364 S.W.2d 190, in which case the court reconciled the following findings by the jury:

"Under Special Issue No. 9 the jury found that Mrs. Ethridge failed to maintain a proper lookout on the occasion in question and that such failure was a proximate cause of the collision.

"Under Special Issue No. 13 the jury found that Mrs. Ethridge failed to ascertain or determine that the way was clear for her to enter the intersection before doing so, but that such failure was not negligence."

The court in stating that the two issues were not coextensive inquiries, used the following language:

"Special Issue No. 9 is all-inclusive on the question as to whether the plaintiff kept and maintained the proper observation at all times on approaching, entering into and after she had entered upon the intersection up until the time of the collision. On the other hand No. 13 only inquires as to her conduct before entering the intersection. That issue is necessarily embraced within but not coextensive with Special Issue No. 9."

In applying to the instant case the reasoning of the Supreme Court in the Traywick v. Goodrich case, supra, it is our view that the mere act of turning to the right only inquires as to a limited portion of the total movement of changing the course and movement of the vehicle and continuing the course of such conduct which resulted in crushing appellee between the bus and the truck. For other cases in which it has been held that no necessary conflict resulted, see Kimble v. Younger Bros.— J. M. English Truck Lines, Tex.Civ.App., 283 S.W.2d 254, writ ref., n. r. e.; Johnson v. East Texas Motor Freight Lines, Tex. Civ.App., 271 S.W.2d 708; Royal Crown Bottling Company v. Smith, Tex.Civ.App., 254 S.W.2d 225; Prater v. Holbrook, Tex. Civ.App., 251 S.W.2d 547.

■ The trial court did not err in overruling appellant's motion for an instructed verdict. We shall not unduly extend this opinion by setting out at length the evidence which supports the court's action in refusing to instruct a verdict in favor of appellant. It will suffice to refer briefly to a few portions of the testimony adduced at the trial. Police Officer Calloway testified that the bus which was headed in a westerly direction was "angled about 15 degrees toward the curb." The regular bus driver, Hartsfield, testified that he thought there was plenty of room to go by whether or not appellee turned his body during the time the bus was passing. He also testified that if the bus was turned to the right the back portion of the bus would track over so as to narrow the space be-

tween the bus and the truck. Appellee testified that the bus veered over towards him and that such movement happened so quickly he didn't have a chance to get out of the way. This evidence, as well as other evidence which we shall not set out, amply warranted the submission by the court of the special issues inquiring as to primary negligence on the part of appellant.

We have carefully read the statement of facts covering the occurrence in question, and in considering all of the evidence, both that favorable to the jury's findings and that militating against their verdict, we have concluded that such findings and verdict are not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In re King's Estate, 1951, 150 Tex. 662, 244 S.W.2d 660.

■ The jury found that the failure of appellee to move from the left side of the parked truck before the occurrence in question was not the sole proximate cause of the occurrence made the basis of this law suit. It is our view that such finding is supported by ample evidence. No issues were submitted on contributory negligence since the trial court after a preliminary hearing held that appellant was not a subscriber to the Workmen's Compensation Act of the State of Texas, although eligible to be such subscriber, and that for such reason the common-law defenses of contributory negligence, fellow servant and assumed risk were unavailable to appellant. The court, over the objections and exceptions of appellant, refused appellant's requested special issues based upon such common-law defenses. Appellant contends that the court erred in this respect for the reason that it was not required to carry Workmen's Compensation insurance since it comes within the exception provided in Section 2 of Article 8306, Vernon's Annotated Texas Statutes, which reads in part as follows:

"The provisions of this law shall not apply to actions to recover damages for personal injuries nor for death resulting from personal injuries sustained by domestic servants, farm laborers, ranch laborers, nor to employees of any firm, person or corporation having in his or their employ less than three (3) employees nor to the employees of any person, firm or corporation operating any steam, electric, street, or interurban railway as a common carrier."

■ It is appellee's position that the exception provided in Section 2 of Article 8306, V.A.T.S., does not apply to appellant since it does not now and has not for some 26 years operated a street railway. It has long since removed its rails from the streets of the City of Houston and substituted buses for street cars previously used. This presents for our determination a question of novel impression, to wit: whether a street railway company that has permanently abandoned its operation of street cars upon rails or fixed tracks and substituted therefor the use and operation of buses, still comes within the exception contained in Section 2 of Article 8306, V.A.T.S. The evidence shows that the Houston Electric Company was a Texas corporation chartered in 1901 "for the purpose of constructing, acquiring, maintaining and operating street and suburban railways for the transportation of passengers within and near the City of Houston, in Harris County, Texas." In 1933 the corporation amended its charter changing the purpose for which it was formed to read:

"This corporation is formed for the purpose of constructing, acquiring, maintaining and operating street and suburban railways for the transportation of passengers within and near cities and towns, and of maintaining and operating motor busses for the purpose of carrying passengers for hire on the public roads, streets, plazas, alleys and highways within the corporate limits of any incorporated cities or towns and on public roads and highways within five (5) miles of the corporate limits of any such incorporated cities or towns."

In 1946 the name of the corporation was changed from Houston Electric Company to Houston Transit Company, but there was no other change made in the corporation's charter.

■ It is our view that the main reason for street railways having been exempted from the operation of the Workmen's Compensation Act was the fact that the operation of such transportation system was subject to the Railroad Liability Act, Article 6432, V.A.T.S. Article 6432 provides:

"Every person, receiver, or corporation operating a railroad or street railway, the line of which shall be situated in whole or in part in this State, shall be liable for all damages sustained by any servant or employe thereof while engaged in the work of operating the cars, locomotives or trains of such person, receiver, or corporation, by reason of the negligence of any other servant or employe of such person, receiver or corporation, and the fact that such servants or employes were fellow-servants with each other shall not impair or destroy such liability."

■ The "line" referred to in said Article manifestly refers to trackage, that is, to railroad and street car tracks. Article 6432 was enacted by the Legislature some twenty years prior to 1917 when the original Texas Workmen's Compensation Law of 1913 was subjected to a major revision. It seems evident that the legislative intent was to exclude from the Workmen's Compensation Act common carriers for hire of passengers or freight or both which operated on railroad or street car trackage, since such employees were in a class by themselves and were protected by the provisions of the Railroad Liability Act. Since appellant no longer operates cars upon trackage or lines situated in whole or in part in this State, it is no longer subject to the provisions of the Railroad Liability Act. It appears logical, therefore, that its employees should now be given the protection of the Workmen's Compensation Law. The law is well

settled that the Workmen's Compensation Act is remedial legislation, and that where doubt exists as to whether a particular cause of action comes within the Act or not, the courts will favor the construction which favors bringing the case within such Act. Bailey v. American General Insurance Co., 1955, 154 Tex. 430, 279 S.W.2d 315. It would seem that the same reasoning should be applied in resolving any doubts concerning the eligibility of a company to become a subscriber to the Workmen's Compensation Act. See Eastern Texas Electric Co. v. Woods, Tex.Civ.App., 230 S.W. 498.

Although not directly in point, the language of the Texas Court of Criminal Appeals, in Patillo v. State, 120 Tex.Cr.R. 568, 47 S.W.2d 847, clearly indicates that that court definitely distinguished between a street car operated upon fixed tracks and motor buses. We quote from the court's opinion as follows:

"In common language a train, street car, or interurban car is understood to be one which serves the public in conveying passengers or freight, or both, and which runs upon fixed tracks. 'Bus' is a contraction of the word 'omnibus,' and it is well understood to be a vehicle which serves the passenger public, but which does not operate upon fixed tracks. It certainly is not a 'train,' nor an 'interurban car,' and no one would understand in common language that, when a street car was mentioned, it had reference to a 'bus.' In Ex parte Vance, 42 Tex.Cr.R. 619, 62 S.W. 568, a very clear distinction was recognized between an omnibus and a street car, and an ordinance of the city of Forth Worth was held to discriminate in favor of the street car."

Both appellant and appellee have referred to certain out-of-state cases but none of them is directly in point. In Utah Light & Traction Co. v. Public Service Commission, 101 Utah 99, 118 P.2d 683, 688, the court stated, "That an automobile corporation such as this is not a street railway was held in Utah Rapid Transit Co. v. Ogden City et al., 89 Utah 546, 58 P.2d 1." In Bradley v.

Degnon Contracting Co., 224 N.Y. 60, 120 N.E. 89, the court said in referring to railroads and street railroads: "Each, however, denotes an enterprise created and operated for the purpose of carrying upon a fixed track passengers and freight or passengers or freight for rates or tolls, without discrimination as to those who demand the transportation."

The Texas Railroad Commission (unlike that of South Carolina which has power to supervise and regulate every utility in the state as stated in the case of City of Columbia v. Tatum, 174 S.C. 366, 177 S.E. 541, cited by appellant), has no power to regulate and control the operation of a bus company operating solely within the limits of the City of Houston, which is a Home Rule city. Subdivision 21 of Article 1175, V.A.T.S., authorizes Home Rule cities to regulate, license and fix the charges or fares charged by any person owning, operating, or controlling any vehicle of any character used for carrying passengers for hire or the transportation of freight for hire on the public streets and alleys of such city.

The Texas Motor Carrier Act manifests the intent to vest exclusive powers and full jurisdiction of public highways in the Railroad Commission, but such Act expressly excludes motor bus companies owned or operated wholly within the limits of any incorporated town or city, and the suburbs thereof. In City of Wichita Falls v. Bowen, 1944, 143 Tex. 45, 182 S.W.2d 695, 154 A.L.R. 1434, the court said:

"By the express terms of Section 1, Subdivision (c) of Article 911a, Vernon's Texas Civil Statutes, the term 'Motor Bus Company' does not include such concerns in so far as they operate wholly within the corporate limits of any incorporated city or town. Clearly this statute operates to deny the Railroad Commission the power to regulate local business done by Motor Bus Companies in such municipalities."

▮▮▮▮ Although under the amendment to its charter in 1933 appellant had the right to operate street railways at the time of appellee's injury, it had long prior thereto ceased to exercise such right. We are of the opinion, therefore, that at such time appellant was a local de facto motor bus company and that its business was not subject to regulation by the Texas Railroad Commission, and that it was no longer subject to the provisions of the Railroad Liability Act of this State. The trial court correctly held that appellant was eligible to be, but was not, a subscriber to the Workmen's Compensation Act, and, therefore, it could not avail itself of the common law defenses of contributory negligence, fellow servant and assumed risk.

▮▮▮ Appellant complains that Special Issue No. 10, the damage issue, permitted the jury to consider elements of damage sustained by appellee which were not a direct and proximate result of the occurrence in question. The pertinent part of the damage issue reads as follows:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate the Plaintiff, Alfred Paul Farrack, for such injuries and damages as have been directly and proximately caused in the past and will in reasonable probability be directly and proximately caused in the future, if any, by reason of such injuries sustained by Alfred Paul Farrack as a direct result of the occurrence made the basis of this suit, taking into account such of the following elements of damages, if any, as you find are established by a preponderance of the evidence, and none other?"

Then follow the elements of damages set out separately including physical pain, mental anguish, loss of capacity to work, etc. The following is an example of one of the elements to be considered by the jury: "1. Such physical pain, if any, as you find from a preponderance of the evidence that Alfred Paul Farrack has sustained from October 12, 1959, to the date of this trial as a direct result of the occurrence of October 12, 1959 made the basis of this suit."

Appellant takes the position that the rule which requires that damages be limited to those which result directly and proximately from the occurrence, also requires that each individual element of damage considered by the jury should also be so limited. Special Issue No. 10 specifically requires that the injuries and damages for which compensation may be recovered must have been directly and proximately caused by reason of the injury sustained as a direct result of the occurrence made the basis of the suit. It is our view that such issue is so worded that the jury could not be misled or consider elements of damage that were not proximately caused by the occurrence in question. It was not necessary to repeat the words "directly and proximately caused" in connection with each separate item or element of damages. The issue clearly and properly limited all elements of damage to foreseeable consequences. It is, of course, unnecessary that a defendant foresee the precise consequences of his wrongful act or omission if he can foresee that some injury of a like or similar nature will result therefrom.

 Over the objection of appellant, the trial court admitted as res gestae the following statement made to the investigating police officer by the student bus driver who was not present at the trial:

"I was going west on Sunset and saw a company truck stopped at the curb. The driver was standing on the side of the truck and signaled the bus to come on through, but the rear side of the bus caught the pedestrian between the bus and the truck knocking him down."

Such statement was made within fifteen minutes following the arrival of the officer at the scene of the accident and within twenty-four minutes from the time the accident occurred. At the time the statement was made appellee was still at the scene of the accident, bloody and in extreme pain. The occurrence was a gruesome one and there was considerable excitement with respect thereto. We cannot say that the state-ment was not a part of the res gestae. Lusinger v. Philpott, Tex.Civ.App., 392 S.W.2d 217, 221, writ ref., n. r. e.; Missouri-Pacific R. Co. v. Rose, Tex.Civ.App., 380 S.W.2d 41, writ ref., n. r. e.

In any event, no harm resulted to appellant by reason of the admission in evidence of such statement. There is no admission of fault on the part of the bus driver, and the statement itself is merely cumulative of other testimony and particularly of the statement elicited from the regular bus driver at the trial, who testified without objection to substantially the identical occurrence as related in the statement.

Judgment affirmed.